LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:      (310) 201-9150
Facsimile:       (310) 201-9160
E-mail:            info@glancylaw.com

Attorneys for Plaintiff and
Proposed Co-Lead Counsel
*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANK HODGES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMMERSION CORPORATION, VICTOR A. VIEGAS, RALPH EDWARD CLENTON RICHARDSON, STEPHEN M. AMBLER and DANIEL J. CHAVEZ,<br><br>Defendants. | No. 09-cv-04073-MMC<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL AND IN FURTHER OPPOSITION TO THE COMPETING MOTION**<br><br>Date: December 18, 2009<br>Time: 9:00 a.m.<br>Courtroom 7, 19th Floor<br>Honorable Maxine M. Chesney |
| MICHAEL POSNER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMMERSION CORPORATION, VICTOR A. VIEGAS, CLENT RICHARDSON and STEPHEN AMBLER,<br><br>Defendants. | No. 09-cv-04118-PJH |

*[Captions Continue on Following Page]*

| | |
|---|---|
| JASON BARRIOS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>IMMERSION CORPORATION, VICTOR A. VIEGAS, STEPHEN M. AMBLER, DANIEL J. CHAVEZ and RALPH EDWARD CLENTON RICHARDSON,<br><br>    Defendants. | No. 09-cv-04412-JW |
| STEVEN H. BUELL, on Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>IMMERSION CORPORATION, VICTOR A. VIEGAS, STEPHEN M. AMBLER, DANIEL J. CHAVEZ and RALPH EDWARD CLENTON RICHARDSON,<br><br>    Defendants. | No. 09-cv-04561-CRB |
| ANDREW BENSON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>IMMERSION CORPORATION, VICTOR A. VIEGAS, CLENT RICHARDSON and STEPHEN AMBLER,<br><br>    Defendants. | No. 09-cv-04744-HRL |

**TABLE OF CONTENTS**

I.   RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Muller Is "The Most Adequate Plaintiff" With The Largest Financial
        Interest In The Relief Sought By The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   Loos Has Conceded That Muller Satisfies The Requirements Of Rule 23
        By Not Attempting To Rebut The Presumption That Muller Is The "Most
        Adequate Plaintiff" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.   Loos Is Precluded From Consideration As A Lead Plaintiff Candidate . . . . . . . . 6

    D.   In The Alternative, The Court Should Either Appoint Muller As
        Co-Lead Plaintiff Or Allow Muller The Opportunity To Take
        Discovery Of Loos' Trade Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR
CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL

i

Movant Norbert Muller (hereinafter, "Muller"), respectfully submits this memorandum of points and authorities in further support of his motion for consolidation of related actions, appointment as lead plaintiff, and approval of co-lead counsel (Doc. #22), and in further opposition to the competing motion of John P. Loos ("Loos") (Doc. #24).

## I.   RELEVANT FACTS

This is a securities class action on behalf of purchasers of the securities of Immersion Corporation ("Immersion" or the "Company") between May 3, 2007 and July 1, 2009, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") against the Company and certain of its executive officers.  In accordance with the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*, on November 2, 2009, two movants, Loos and Muller, timely filed competing motions for consolidation, appointment of lead plaintiff, and approval of selection of lead counsel.

## II.   ISSUES TO BE DECIDED

1.   Whether consolidation of the above-captioned related actions is appropriate under Rule 42 of the Federal Rules of Civil Procedure when the related actions involve common questions of law and fact?

2.   Whether Movant Norbert Muller has the largest financial interest in this case, has made a preliminary showing that he satisfies Rule 23 of the Federal Rules of Civil Procedure, and thus is the "most adequate plaintiff," requiring his appointment as lead plaintiff for the class and approval of his selection of counsel pursuant to the PSLRA?

## III.   ARGUMENT[1]

### A.   Muller Is "The Most Adequate Plaintiff" With The Largest Financial Interest In The Relief Sought By The Class

While only the Ninth and Third Circuits have provided district courts with any substantive

---

[1] As both lead plaintiff movants support consolidation of the related actions, Muller respectfully refers the Court to his opening memorandum for arguments in favor of consolidation. *See* Doc. #22, at 5.

guidance on applying the lead plaintiff provisions of the PSLRA, both agree that the statute does not define financial interest. *See In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("[T]he court may select accounting methods that are both rational and consistently applied."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (stating that the PSLRA "provides no formula for courts in making this assessment," and favorably referencing the factors commonly used by district courts to measure financial interest).

A careful review of the facts underlying the competing motions strongly favors the appointment of Muller as lead plaintiff pursuant to the Ninth Circuit's prescription in *Cavanaugh*, 306 F.3d at 730 n.4, that financial interest should be calculated using a methodology that is rational and consistently applied, and consistent with decisions within this District that looked to the number of net shares purchased to determine the largest financial interest. *See, e.g., Weisz v. Calpine Corp.*, No. C 02-1200, 2002 WL 32818827, at *5-*8 (N.D. Cal. Aug. 15, 2002) (applying the "number of net shares purchased during the class period" coupled with the "losses suffered by selling shares during the class period" to determine the largest financial interest); *Ruland v. Infosonics Corp.*, No. 06-CV-1231, 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (noting that "the candidate with the most net shares purchased will normally have the largest potential damage recovery"); *In re Critical Path*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("[T]he number of net shares purchased during the class period is determinative.").

Despite two opportunities, Loos has twice failed to describe or address the generally accepted factors relevant to the Court's determination of which movant has the "largest financial interest ***in the relief sought by the Class***." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). Most courts utilize four factors (shares purchased, net shares purchased, net funds expended, and approximate loss) to assess a movant's financial interest. *See, e.g., In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d. 286, 296 (E.D.N.Y. 1998). While Loos is correct in noting that some courts have considered the loss factor to be determinative, such decisions more often than not involve situations where there is a wide disparity in the movants' losses, where the movants do not dispute the order

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL

- 2 -

1  of their respective financial interests, or where one movant wins on all four factors.[2] This is no such
2  situation. Undoubtedly, Loos is quick to urge the Court to employ a bare-bones analysis of only the
3  loss factor as he is well aware that two of the factors (net shares purchased and net funds expended)[3]
4  militate in favor of a finding that Muller has the greater financial interest and potentially that Loos
5  has no financial interest.

6  What is now clear after two rounds of submissions is that Loos is attempting to gloss over
7  the fact that it is more than probable that his financial interest in the relief sought by the Class could
8  be *de minimis* or even a whopping ***zero!*** Loos' attempt to ignore the fact that he may have actually
9  benefitted from selling nearly twice as many shares of Immersion stock at artificially inflated prices
10 than he purchased is transparent. He has now twice chosen to forego any discussion of the number
11 of net shares he purchased during the class period or net funds expended. Even more telling is that
12 in his opening submission, Loos specifically chose to use the disfavored and discredited first-in-first-
13 out ("FIFO")[4] accounting method to present the appearance of a rather hefty $1.2 million "loss" in
14 a thinly veiled attempt to obfuscate his status as a "net seller" and create the artificial appearance
15 of a higher loss. The only plausible explanation[5] for Loos' insistence on the FIFO calculation is that

---

[2] Moreover, a suggestion that the loss factor is considered the most important factor incorrectly assumes that the factors are independent of each other and fails to fully appreciate that the loss factor may simply appear to be more important at times because of the usual existence of a correlation between the factors. Essentially, any suggestion that the loss factor by itself is most important ignores that the greatest loss will often tend to be a function of the greatest number of net shares and/or the most net funds expended.

[3] Loos' net shares purchased during the Class Period, were approximately ***negative 140,000 shares***, and his net funds expended is technically zero as on a net basis he actually ***received over $400,000 in funds***.

[4] *See* Doc. #46, at 6-7 (citing cases and explaining that FIFO has fallen into disfavor as a method of calculating financial interest, FIFO tends to exaggerate losses, and that the last-in-first-out ("LIFO") method has become the preferred method).

[5] To support his reliance on the FIFO method, Loos twice cites *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*, No. C 01-20418 JW, 2004 U.S. Dist. LEXIS 27008, at *11 (N.D. Cal. May 27, 2004). Loos' reliance on this case is misplaced. This precise argument was rejected by Judge Alsup who chose to "follow a LIFO convention for investors who both buy and sell within the class period" because "LIFO is closer to the economic realities of market investing and the purposes of the securities acts" and because "[t]he LIFO method better tracks the impact of investment decisions and how market fraud impacts them." *In re Sipex Corporation Sec. Litig.*, No.

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL

- 3 -

as a "net seller" the FIFO method ignores his sales during the class period, thereby exaggerating his losses by not taking into account gains that may have accrued to Loos during the Class Period due to the inflation in the stock price.[6] In his second submission Loos continues to assert a $1.2 million loss, however, he also casually concedes that his loss under a LIFO calculation is only approximately $256,000. Loos' concession underscores how grossly overstated his initially claimed $1.2 million loss was given the approximate $1 million disparity using the more accurate and preferred LIFO methodology.

Loos claims to have a larger financial interest based solely on the loss factor and asserts a greater LIFO loss of approximately $60,000.[7] His position is flawed for several reasons. As an initial matter, investment losses can be calculated in many different ways. As Loos has shown, such methods can be manipulated to yield results of great disparity because they are, at best, simply a rough approximation of recoverable damages. Moreover, Loos' purported LIFO "loss" is hardly a foregone conclusion given that the calculation is still potentially overstated because Loos was a *net seller* throughout the class period and there is a plausible chance that Loos will have no net recovery. Without the necessary information about Loos' cost basis on his opening position of over 140,000 shares of Immersion stock, at this early stage it is impossible to determine the extent of his loss, if any, because the extent to which he actually profited from his transactions during the Class Period

---

C 05-00392 WHA, slip op., at 6-7 (N.D. Cal. May 24, 2005) ("*Sipex* Order") (attached to the Declaration of Michael Goldberg ("Goldberg Reply Decl.") as Ex. A). As Judge Alsup explained, reliance on *Cisco* is flawed because that case "cites *Broudo v. Dura Pharmaceuticals Inc.*, 339 F.3d 933, 938 (9th Cir. 2003), for the proposition that damages may be proved by simply showing that plaintiffs purchased stock at an inflated price" and which was "subsequently overturned by *Dura Pharmaceuticals, Inc. v. Michael Broudo*, 125 S. Ct. 1627, 1631 (2005)." *See Sipex* Order, at 8.

[6] "[U]nder FIFO, many plaintiffs will show damages from defendant's alleged misconduct when those plaintiffs actually profited from the misconduct." *Johnson v. Dana Corp.*, 236 F.R.D. 349, 352 (N.D.Ohio 2006). Indeed, as with Loos who entered the Class Period with more than 140,000 shares of Immersion stock which he sold during the Class Period, by "[u]sing FIFO, plaintiffs [such as Loos] with significant pre-existing holdings of defendants' securities can profit substantially from defendant's misconduct and then turn around and show a loss for purposes of litigation." *Id.* at 353.

[7] Interestingly, approximately 75% of that difference, or $45,000, is attributable to Loos' purchase of options which expired prior to the close of the Class Period.

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL

- 4 -

1 is currently unknowable. *See, e.g., Ruland*, 2006 WL 3746716, at *5 n.1 (noting that "[h]ad movant purchased stock before the class period and sold it for a profit during the class period, such windfall gains would be deducted from [the movant's] losses"). Only *via* discovery of Loos' trade and account information could the necessary items be evaluated and netted.

Here, however, as Loos has now conceded, although the approximate loss of each movant is fairly close, a decisive disparity exists in the number of net shares purchased. The fact that loss calculations are mere approximations and the fact that Loos' LIFO calculation ignores his potential profit as a "net seller," coupled with the closeness of the losses, makes it more than likely that the differences in losses fall within the margin of error and uncertainty inherent in the approximations. Under these circumstances, the net shares factor is by far a more reliable and reasonable measure of financial interest than the loss factor. As demonstrated in his opposition brief, *see* Doc. #46, at 3-6, Muller has the largest financial interest under this measure.

**B. Loos Has Conceded That Muller Satisfies The Requirements Of Rule 23 By Not Attempting To Rebut The Presumption That Muller Is The "Most Adequate Plaintiff"**

In addition to possessing the greatest financial interest in the relief sought by the Class, it is undisputed that Muller "is both willing to serve and satisfies the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730. As set forth in his previous submission, Muller satisfies both prongs of Rule 23 and has selected counsel who are more than capable of conducting this litigation in the best interests of the Class. *See* Doc. #46, at 10-11. Indeed, the "opposing movant[] make[s] no argument against" Muller's appointment, let alone offers any proof to rebut the presumption that Muller is the most adequate plaintiff. *Tsirekidze v. Syntax-Brillian Corp.*, No. 207CV02204, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008); 15 U.S.C. § 78u-4(a)(3)(B)(II) (presumption may be rebutted only upon "proof").[8]

---

[8] It is not surprising that Loos fails to challenge Muller's suitability for appointment as lead plaintiff or his ability to meet the requirements of Rule 23. In light of Loos' status as a "net seller" and already apparent efforts to avoid addressing his substantial sales of Immersion stock during the Class Period, any attempt to distract the Court from focusing on his own glaring deficiencies by resorting to *ad hominem* attacks about Muller's typicality or adequacy for the first time on reply

The Court should grant Muller's motion in its entirety.

**C.     Loos Is Precluded From Consideration As A Lead Plaintiff Candidate**

Even if the Court were to ignore Muller's larger financial interest as well as his readily apparent satisfaction of Rule 23's requirements, Loos' high-volume trading of Immersion stock and options during the Class Period, along with his status as a net seller of Immersion stock, individually and collectively, preclude his consideration as a lead plaintiff candidate.

As explained in Muller's opposition brief, *see* Doc. #46, at 7-10, Loos fails to pass muster under the requirements of Rule 23 because he was a major net seller during the Class Period *i.e.*, he sold 141,000 more shares then he purchased during the Class Period. *See Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (rejecting movant that was a "net seller" even though it "may have sustained a small loss" because "it does not adequately represent the proposed class of purchasers."); *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 174 (W.D.N.Y. 2007) (removing from consideration for lead plaintiff an institution found to be a net seller); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (a net seller is "totally out of the running for designation as lead plaintiff").

Just as fatal, Loos' high-volume trading will subject him to protracted litigation over unique and potentially fatal defenses that may ultimately lead to his rejection as a class representative. *See, e.g., Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 ("Such a high-volume day trader might be subject to the unique defense that frantic trading belies any true reliance on company reports or even on the integrity of the stock price itself.").[9]  On the first day of the Class Period alone, Loos engaged in twenty-nine transactions and a total of approximately six hundred ninety

---

should not be countenanced. *See, e.g., Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("we decline to consider new issues raised for the first time in a reply brief").  In sum, Loos has failed to rebut the presumption that Muller is the most adequate plaintiff.

[9]*See, e.g., In re Safeguard Scientifics*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) ("Adal's purchases also raise serious doubts as to the materiality of the alleged fraud disclosures. In light of Lead Plaintiff Adal's employment as a day trader (or position trader) who typically focuses on technical price movements rather than price, we find that even under a fraud-on-the-market theory, Defendants have presented compelling reason to rebut the reliance presumption.").

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL

- 6 -

1 transactions over the course of the Class Period. *See* Doc. #25, at Ex. 1.

### D. In The Alternative, The Court Should Either Appoint Muller As Co-Lead Plaintiff Or Allow Muller The Opportunity To Take Discovery Of Loos' Trade Information

In the alternative, should the Court find Loos to be the most adequate plaintiff, at a minimum, the Court should either appoint Muller as a co-lead plaintiff in this action or at least provide Muller the opportunity to serve limited document requests on Loos to take discovery of whether he is an adequate and typical representative in light of his status as a "net seller."

This Court's reasoning in *Sipex* is instructive. Unlike the present situation where the differences in losses of the two movants fall within the margin of error and uncertainty inherent in the approximations, in *Sipex*, one of the movants, Globis, was a net seller but had suffered losses that dwarfed those of Hirsch, the competing movant. Despite the great disparity in their respective losses, in *Sipex*, the court appointed both movants as co-lead plaintiffs:

> Since Globis, an active trader, was a net *seller* throughout the class period, ***there is a plausible chance that Globis will have no net recovery. This is not yet certain, however, because the necessary calculations are unknowable at this early stage. Only with the benefit of expert evidence could the necessary items be determined and then netted. For the time being, Globis has a sufficient stake to be appointed as one of two lead plaintiffs. Because the net loss is speculative for Globis at this point and because Globis may eventually be shown to have no net loss, Mr. Hirsch will be made a co-lead plaintiff.*** This ruling is without prejudice to defense arguments to be made later, on the class certification motion. The same is true for the other Rule 23 issues raised by the defense. (No other competing lead plaintiff is challenging the Rule 23 qualifications of the pending candidates).

*Sipex* Order, at 8 (emphasis added).

While here, the various factors used in evaluating financial interest weigh in favor of a finding that Muller has a larger financial interest than Loos, *see supra* §III.A, if the Court were to look solely at Loos' purported LIFO loss, the Court should follow Judge Alsup's decision in *Sipex* and appoint Muller as co-lead plaintiff alongside Loos to ensure adequate representation of the Class.

In the alternative, should the Court neither appoint Muller as lead plaintiff nor co-lead plaintiff, it suffices to say that Muller has at least established a "reasonable basis for a finding that

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL

- 7 -

1  [Loos] may be incapable of adequately representing the class" and Muller should be permitted to
2  take discovery of Loos' transactions in Immersion stock.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iv)
3  ("discovery relating to whether a member or members of the purported plaintiff class is the most
4  adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable
5  basis for a finding that the presumptively most adequate plaintiff is incapable of adequately
6  representing the class"); *see, e.g., Prissert v. Emcore Corporation*, Civ. No. 08-1190 MV/RLP, slip
7  op., at 7 (D.N.M. Sept. 25, 2009) (Goldberg Reply Decl., Ex. B) to the accompanying Declaration
8  of Michael Goldberg) (allowing movants to take discovery where they demonstrated a reasonable
9  basis that a hedge fund's "complex structure" and "atypical investment strategies" may render it
10  atypical or inadequate but movants lacked sufficient proof of such to rebut the presumption absent
11  discovery of necessary information from the hedge fund).

12  The court's reasoning in *Emcore* applies in full force to the present situation.  As recognized
13  by Judge Alsup's discussion in *Sipex*, the fact that Loos was a net seller throughout the class period
14  means that there is a "plausible chance" that Loos may "have no net recovery" and although "the
15  necessary calculations are unknowable at this early stage" through discovery of Loos' transactions
16  and accounts "the necessary items [could] be determined and then netted." *Sipex* Order, at 8.  The
17  court's decision in *Emcore* recognized that limited discovery should be allowed where a lead
18  plaintiff movant makes a reasonable showing that the presumptive lead plaintiff may not satisfy the
19  requirements of Rule 23, but lacks access to relevant information which could rebut the presumption
20  but can only be obtained from the presumptive lead plaintiff.  Here, Muller lacks the necessary
21  information about the cost basis of Loos' opening position of Immersion stock at the start of the
22  Class Period, which unsurprisingly, Loos has not provided to the Court.  In the interests of the
23  putative class and judicial economy, Muller at a minimum should be allowed to take discovery
24  because, "at this point," without Loos providing this information, his "net loss is speculative" even
25  though down the road at the class certification stage, Loos "may eventually be shown to have no net
26  loss." *Sipex* Order, at 8.

27
28

Indeed, the notion that Loos should have to put forth additional information to resolve the great uncertainty surrounding the extent, if any, of his losses is by no means a stretch. In one of the only two seminal appellate decisions expounding on the PSLRA's lead plaintiff provisions, the Third Circuit expressed the opinion that in this precise type of situation "a district court would be well within its discretion" to require a movant to provide additional documentation so that the court may make an "informed decision" of the movant's financial interest:

> The process begins with the identification of the movant with "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). In many cases . . . this determination will be relatively easy, ***but in others it may prove difficult***.
>
> \*   \*   \*
>
> ***Any time the question appears genuinely contestable, we think that a district court would be well within its discretion in requiring that competing movants submit documentation as to their holdings in the defendant company or companies and in seeking further information if it deems the original submissions to be an inadequate basis for an informed decision***.

*Cendant*, 264 F3d at 262 (emphasis added).

## IV.   CONCLUSION

For the foregoing reasons, Muller respectfully requests that the Court grant his motion and enter an Order (a) consolidating the related actions, (b) appointing Norbert Muller as Lead Plaintiff, (c) approving his selection of Glancy Binkow & Goldberg LLP and Kirby McInerney, LLP as co-lead counsel for the Class, and (d) granting such other relief as the Court may deem just and proper.

Dated: December 4, 2009

**GLANCY BINKOW & GOLDBERG LLP**

 */s/   **Michael Goldberg**  
Lionel Z. Glancy  
Michael Goldberg  
1801 Avenue of the Stars, Suite 311  
Los Angeles, California 90067  
Telephone:    (310) 201-9150  
Facsimile:     (310) 201-9160  
E-mail:          info@glancylaw.com

**KIRBY MCINERNEY, LLP**  
Ira M. Press  
Steven Cohn  
825 Third Ave, 16th Floor  
New York, NY 10022  
Telephone: (212) 317-2300  
Facsimile: (212) 751-2540

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL

- 9 -

*Attorneys for Movant Norbert Muller*
*and Proposed Co-Lead Counsel*

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL

- 10 -

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHEN DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 45**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On December 4, 2009, I caused to be served the following document:

    **1.    MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL**

    **2.    DECLARATION OF MICHAEL GOLDBERG IN FURTHER SUPPORT OF MOTION OF NORBERT MULLER FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL AND IN FURTHER OPPOSITION TO COMPETING MOTION**

By posting this document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the following parties:

**SEE ATTACHED SERVICE LIST**

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 4, 2009, at Los Angeles, California.

                                         *<u>s/Michael Goldberg</u>*
                                          Michael Goldberg

*Hodges.v. Immersion Corp., et al.*, **No. 09-cv-04073-MMC**

## SERVICE LIST

### Electronically To All ECF-Registered Entities

Shawn A. Williams
Coughlin Stoia Geller
    Rudman & Robbins LLP
100 Pine Street Suite 2600
San Francisco, CA 94111
Tel: 415-288-4545
Fax: 415-288-4534

Darren Jay Robbins
David C. Walton
Coughlin Stoia Geller
    Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
Tel: 619-231-1058
Fax: 619-231-7423

Willow E. Radcliffe
Coughlin Stoia Geller
    Rudman & Robbins LLP
100 Pine Street Suite 2600
San Francisco, CA 94111
Tel; 415/288-4545
Fax: 415-288-4534

Betsy Carol Manifold
Francis M. Gregorek
Rachele R. Rickert
Wolf Haldenstein Adler Freeman & Herz
Symphony Towers
750 B Street Suite 2770
San Diego, CA 92101
Tel: 619-239-4599

Frank James Johnson
Johnson Bottini LLP
655 W. Broadway, Suite 1400
San Diego, CA 92101
Tel: 619-230-0063
Fax: 619-233-5535

Erik David Peterson
Ramzi Abadou
Barroway Topaz Kessler
    Meltzer Check, LLP
580 California Street
Suite 1750
San Francisco, CA 94104
Tel: 415-400-3005
Fax: 415-400-3001

Felix Shih-Young Lee
Jay L. Pomerantz
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Tel: 650-988-8500
Fax: 650-938-5200

Jennifer Corinne Bretan
Susan Samuels Muck
Fenwick & West LLP
555 California Street
12th Floor
San Francisco, CA 94104
Tel: 415-875-2300
Fax: 415-281-1350

CERTIFICATE OF SERVICE

**By US Mail To All Known Non-ECF-Registered Entities**

Ira M. Press
Steven Cohn
Kirby McInerney, LLP
825 Third Ave
16th Floor
New York, NY 10022
Tel: (212) 317-2300
Fax: (212) 751-2540

Law Offices of Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Tel: 215-638-4847
Fax: 215-638-4867

Jack G Fruchter
Abraham Fruchter & Twerskey, LLP
One Pennsylvania Plaza
Suite 2805
New York, NY 10119
Tel: 212-279-5050
Fax: 212-279-3655

Joe Kendall
Hamilton Lindley
Kendall Law Group, LLP
3232 McKinney Ave.
Suite 700
Dallas TX 75204
Tel: 214-744-3000
Fax: 214-744-3015