1  COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2  DARREN J. ROBBINS (168593)
  TRICIA L. McCORMICK (199239)
3  655 West Broadway, Suite 1900
  San Diego, CA  92101
4  Telephone:  619/231-1058
  619/231-7423 (fax)
5  darrenr@csgrr.com
  triciam@csgrr.com
6       – and –
  WILLOW E. RADCLIFFE (200087)
7  100 Pine Street, Suite 2600
  San Francisco, CA  94111
8  Telephone:  415/288-4545
  415/288-4534 (fax)
9  willowr@csgrr.com

10  *Counsel for John P. Loos and*
  *[Proposed] Liaison Counsel for the Class*
11

12  BROWER PIVEN
   A Professional Corporation
13  DAVID A.P. BROWER
  488 Madison Avenue, Eighth Floor
  New York, NY  10022
14  Telephone:  212/501-9000
  212/501-0300 (fax)
15  brower@browerpiven.com

16  *Counsel for John P. Loos and*
  *[Proposed] Lead Counsel for the Class*
17

18            UNITED STATES DISTRICT COURT

19          NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 20  FRANK HODGES, Individually and on Behalf of All Others Similarly Situated, | No. 09-cv-04073-MMC |
| 21           Plaintiff, | CLASS ACTION |
| 22     vs. | REPLY MEMORANDUM IN FURTHER SUPPORT OF JOHN P. LOOS'S MOTION |
| 23  IMMERSION CORPORATION, et al., | FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL |
| 24          Defendants. | |
| 25  | DATE:     December 18, 2009 |
| 26  | TIME:     9:00 a.m.<br>COURTROOM:  7 |

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND BACKGROUND ........................................................................1

II.   ARGUMENT ........................................................................................................3

    A.   Mr. Loos Has the Largest Financial Interest No Matter How Losses Are
        Calculated in This Case ...........................................................................3

        1.   Mr. Loos Has The Largest Financial Interest Under FIFO.......................3

        2.   Mr. Loos Has the Largest Financial Interest Under LIFO........................4

        3.   Mr. Loos Has the Largest Financial Interest Under the Net Shares
            Purchased Method........................................................................5

    B.   Mr. Loos Is Not Subject to Any "Unique Defense" Based on His Status as
        a So-Called "Net Seller" of Immersion Securities....................................7

        1.   Mr. Loos Was Not a "Net Gainer" but Rather a "Net Loser" Under
            a LIFO Loss Calculation................................................................7

        2.   Mr. Loos Is Not Subject to a Unique Defense as a Net Seller....................9

    C.   Mr. Loos's Trading Does Not Render Him Atypical .............................11

III.   MR. MULLER IS ENTITLED TO NO DISCOVERY ....................................................13

IV.   CONCLUSION........................................................................................................15

# TABLE OF AUTHORITIES

Page

**CASES**

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)....................................................................................10, 12

*Blackie v. Barrack,*
    524 F.2d 891 (1975)..............................................................................................11

*Crossen v. CV Therapeutics,*
    No. C 03-03709 SI, 2005 U.S. Dist. LEXIS 41396
    (N.D. Cal. Aug. 10, 2005)....................................................................................12

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)..........................................................................................6, 10

*Ferrari v. Impath, Inc.,* No. 03-5667, 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July
    15, 2004) ................................................................................................................14

*Freedman v. Louisiana-Pacific Corp.,*
    922 F. Supp. 377 (D. Or. 1996) ..........................................................................10

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ...............................................................................11

*Hodges v. Akeena Solar, Inc.,*
    No. C 09-02147 JW, 2009 U.S. Dist. LEXIS 103663
    (N.D. Cal. Oct. 21, 2009).................................................................................1, 4

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
    No. 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588
    (S.D.N.Y. Apr. 6, 2006).....................................................................................2, 4

*In re AST Research Sec. Litig.,*
    No. CV 94-1370 SVW(SHx), 1994 U.S. Dist. LEXIS 20850
    (C.D. Cal. Nov. 10, 1994)....................................................................................10

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) .............................................................................1, 6

*In re CornerStone Propane Ptnrs,*
    No. C 03-2522 MHP, 2006 U.S. Dist. LEXIS 25819
    (N.D. Cal. May 3, 2006) .......................................................................................7

*In re Credit Suisse-AOL Sec. Litig.,*
    253 F.R.D. 17 (D. Mass. 2008).............................................................................8

1
2
                                                                          **Page**

3
*In re Critical Path, Inc. Sec. Litig.*,
4
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) ..........................................................................6

5
*In re Electro-Catheter Sec. Litig.*,
    No. 87-41, 1987 U.S. Dist. LEXIS 13500
6
    (D.N.J. Dec. 3, 1987) ........................................................................................................12

7
*In re Level 3 Commc'ns, Inc. Sec. Litig*,
    No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706
8
    (D. Colo. May 4, 2009) ......................................................................................................7

9
*In re Network Assocs. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..............................................................................5
10

11
*In re NTL Sec. Litig.*,
    No. 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 5346
12
    (S.D.N.Y. Feb. 14, 2006) ................................................................................................10

13
*In re: Oppenheimer Rochester Funds Group Sec. Litig.*, No. 09-md-02063-JLK-
    KMT, at 9 (D. Colo. Nov. 18, 2009)................................................................................15
14

15
*In re Oxford Health Plans, Inc. Sec. Litig.*,
    199 F.R.D. 119 (S.D.N.Y. 2001) ....................................................................................13
16

17
*In re Safeguard Scientifics*,
    216 F.R.D. 577 (E.D. Pa. 2003).......................................................................................12

18
*In re Schering-Plough Corp. Sec. Litig.*,
    No. 01-0829, 2003 U.S. Dist. LEXIS 26297
19
    (D.N.J. Oct. 10, 2003) .............................................................................................1, 4, 11

20
*In re Scorpion Techs., Inc. Sec. Litig.*,
    No. C 93-20333 RPA, 1994 U.S. Dist. LEXIS 21413
21
    (N.D. Cal. Aug. 1, 1994)...........................................................................................10, 12

22
*In re SemGroup Energy Partners, L.P.*, No. 08-425, 2008 U.S. Dist. LEXIS 87218
23
    (N.D. Okla. Oct. 27, 2008)...............................................................................................13

24
*In re Unioil Sec. Litig.*,
    107 F.R.D. 615 (C.D. Cal. 1985) ....................................................................................10
25

26
*In re Veeco Instruments, Inc.*,
    233 F.R.D. 330 (S.D.N.Y. 2005) ..................................................................................2, 4

27
*Kinsey v. Network Associates, Inc.*, 77 F. Supp. 2d 1111, 1116 (N.D. Cal. 1999) ......................15
28

**Page**

*Kops v. Lockheed Martin Corp.*,
    No. CV 99-6171-MRP, slip op. (C.D. Cal. Nov. 10, 2003)................................13

*Montoya v. Herley Indus.*, No. 06-2596, 2006 U.S. Dist. LEXIS 83343 (E.D. Pa. Nov.
    14, 2006) ........................................................................................................13

*Moskowitz v. Lopp*,
    128 F.R.D. 624 (E.D. Pa. 1989)...................................................................12

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*,
    No. C 01-20418 JW, 2004 U.S. Dist. LEXIS 27008
    (N.D. Cal. May 27, 2004) .........................................................................1, 4

*Prissert v. Emcore Corporation*, Civ. No. 08-1190 MV/RLP, slip op. (D.N.M. Sept.
    25, 2009) ......................................................................................................14

*Query v. Maxim Integrated Prods.*,
    558 F. Supp. 2d 969 (N.D. Cal. 2008) ..........................................................5

*Richardson v. TVIA, Inc.*,
    No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406
    (N.D. Cal. Apr. 16, 2007) ................................................................... *passim*

*Rubenstein v. Collins*,
    162 F.R.D. 534 (S.D. Tex. 1995)..................................................................10

*Ruland v. Infosonics Corp.*,
    No. 06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144
    (S.D. Cal. Oct. 23, 2006) ..............................................................................7

*Saddle Rock Partners Ltd. v. Hiatt*,
    No. 96 Civ. 9474 (SHS), 2000 U.S. Dist. LEXIS 11931
    (S.D.N.Y. Aug. 17, 2000) ............................................................................13

*Seidman v. Am. Mobile Sys.*,
    157 F.R.D. 354 (E.D. Pa. 1994)...................................................................10

*Siegall v. Tibco Software, Inc.*,
    No. C 05-2146 SBA, 2006 U.S. Dist. LEXIS 26780
    (N.D. Cal. Feb. 24, 2006)..............................................................................5

*Taubenfeld v. Career Educ. Corp.*,
    No. 03 C 8884, 2004 U.S. Dist. LEXIS 4363
    (N.D. Ill. Mar. 22, 2004)........................................................................11, 13

1

2                                                                                              **Page**

3   *Tsirekidze v. Syntax-Brillian Corp.*,

        No. CV-07-2204-PHX-FJM, 2008 WL 942273
4       (D. Ariz. Apr. 7, 2008)..................................................................................................12

5   *Yamner v. Boich*,
        No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849
6       (N.D. Cal. Sept. 15, 1994) ..........................................................................................10

7   **STATUTES, RULES AND REGULATIONS**

8   15 U.S.C.
        §78u-4(a)(3)(B)(iii)(I)..................................................................................................2
9       §78u-4(a)(3)(B)(iii)(I)(bb) ......................................................................................1, 6
        §78u-4(a)(3)(B)(iii)(II) ...............................................................................................13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                                                                                    **Page**

3   Federal Rules of Civil Procedure

        Rule 23 ...................................................................................................1, 3

4       Rule 23(a)(3) ...............................................................................13

        Rule 23(a)(4) ...............................................................................13

5

6   **LEGISLATIVE HISTORY**

7   H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ..................................3

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    John P. Loos ("Mr. Loos") respectfully submits this memorandum in further support of his

2    motion for appointment as lead plaintiff and for approval of selection of lead counsel filed on

3    November 2, 2009 (Dkt. No. 24) and in response to the memorandum in opposition to the motion to

4    appoint Mr. Loos as lead plaintiff, filed by Norbert Muller ("Mr. Muller") on November 25, 2009

5    ("Muller Opp.") (Dkt. No. 46).

6    **I.    INTRODUCTION AND BACKGROUND**

7    Messers. Loos and Muller have timely filed competing motions to be appointed as lead

8    plaintiff and to have their respective choice of counsel approved as lead counsel.  Under the Private

9    Securities Litigation Reform Act of 1995 ("PSLRA"), the Court must appoint the movant who has

10   the largest financial interest and who otherwise satisfies the requirements of Fed. R. Civ. P. 23.  *See*

11   15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).  In

12   this case, Mr. Loos, who suffered a loss of ***over $1,200,000*** under a first-in, first-out ("FIFO")

13   accounting method,[1] is the statutorily presumptive lead plaintiff.  In contrast, Mr. Muller's claimed

14   loss is only $196,161.

15   Nevertheless, Mr. Muller, whose claimed loss is almost ***84% smaller than Mr. Loos's loss***

16   argues that Mr. Loos's seven-figure loss should not be considered in determining which movant has

17   the "greatest financial interest in the relief sought" because FIFO, a well-recognized accounting

18   method used for calculating losses, including stock losses for tax reporting purposes, has

19   occasionally not been used by some courts.  This argument has no merit.  In fact, numerous courts

20   have chosen the FIFO method to calculate losses in selecting the appropriate PSLRA lead plaintiff.

21   *See, e.g.*, *Hodges v. Akeena Solar, Inc.*, No. C 09-02147 JW, 2009 U.S. Dist. LEXIS 103663, at *6-

22   *7 (N.D. Cal. Oct. 21, 2009); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*, No. C

23   01-20418 JW, 2004 U.S. Dist. LEXIS 27008, at *11 (N.D. Cal. May 27, 2004);  *In re Schering-*

24   *Plough Corp. Sec. Litig.*, No. 01-0829, 2003 U.S. Dist. LEXIS 26297, at *26 (D.N.J. Oct. 10, 2003);

25   

26   [1]    *See* Declaration of Tricia McCormick in Support of John P. Loos's Motion for
27   Consolidation, Appointment of Lead Plaintiff and Approval of Selection of Lead Counsel
     ("McCormick Decl."), filed November 2, 2009, Ex. B (Dkt. No. 25).

28

1   *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS

2   17588, at *61-*62 (S.D.N.Y. Apr. 6, 2006); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333

3   (S.D.N.Y. 2005).   Therefore, Mr. Loos possesses the largest financial interest by far and is,

4   therefore, the presumptive lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

5         Moreover, despite Mr. Muller's clearly erroneous contention that the last-in, last-out

6   ("LIFO") accounting method "is the preferred method for calculating a lead plaintiff movant's

7   losses" (Muller Opp. at 6) here, Mr. Loos has the largest loss under the LIFO method as well.  As

8   Mr. Muller ***admits***, Mr. Loos's LIFO loss is ***$256,821.02***, which is still more than 25% greater than

9   Mr. Muller's claimed LIFO loss of $196,161.20.  *See id.* at 5.  Consequently, under either FIFO or

10  LIFO, Mr. Loos has the largest financial interest.

11        Unable to dispute that Mr. Loos has the largest loss under any recognized loss accounting

12  method, Mr. Muller attempts to distract the Court from the statutorily mandated calculation of the

13  competing movant's respective losses by resorting to an economically irrelevant argument about the

14  number of Mr. Loos's "net shares purchased." *Id.* at 3-5.  Unfortunately for Mr. Muller, even if the

15  use of "net shares purchased" information could generate a useful loss calculation – which it cannot

16  – that analysis still results in Mr. Loos having the larger financial interest here.  In fact, on the date

17  of the first partially curative disclosure of defendants' fraud in this case on February 28, 2008, Mr.

18  Loos held over 50,000 net shares of Immersion.  Thus, as of the date of the first partially curative

19  disclosure in this case that could be used to calculate compensable damages, not only is Mr. Loos not

20  a "net-seller" of Immersion securities, but Mr. Muller held only 15,000 net shares as of that date.

21  Consequently, Mr. Loos has the largest financial interest even under a net shares purchased analysis.

22  *See infra* §II.A.3.

23        Mr. Muller has a substantially smaller loss than Mr. Loos under any known method for

24  calculating financial interest under the PSLRA and, therefore, cannot meet the primary requirement

25  needed to be appointed the lead plaintiff.  Thus, he seeks to challenge Mr. Loos, who is indisputably

26  the statutory presumptive lead plaintiff, *see* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), by arguing that simply

27  being a "net seller" of Immersion securities during the Class Period of May 3, 2007 to June 30, 2009,

28  inclusive, somehow impacts Mr. Loos's ability to vigorously pursue the class claims in this action.

1   Again, not only is Mr. Muller's argument illogical, but his argument has been rejected by courts in

2   this District and across the country.  The proper analysis is not whether a plaintiff is denominated as

3   a "net seller" or net purchaser" during a class period, but whether the plaintiff suffered a net loss

4   after accounting for **all** of the plaintiff's class period trading in the subject company's stock.  Here,

5   Mr. Loos suffered an overall LIFO loss.  Thus, using the language used by Mr. Muller, Mr. Loos is a

6   so-called ***"net loser" – not a "net-gainer"*** like the plaintiffs in the cases Mr. Muller cites.

7   Therefore, the fact that Mr. Loos may have sold more shares than he purchased during the Class

8   Period is completely irrelevant to his ability to serve as the lead plaintiff in this action.  *See*

9   *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *11-*13 (N.D.

10  Cal. Apr. 16, 2007).

11          Finally, Mr. Muller implies, without analysis or support, that Mr. Loos's "high volume

12  trading" renders him subject to some unexplained "unique defenses."  Once again, Mr. Muller is

13  incorrect.  Not only, as demonstrated herein, was Mr. Loos's trading far from atypical, but the

14  PSLRA's strong preference in favor of large investors to serve as lead plaintiff will, as a matter of

15  course, typically result in the statutory "most adequate plaintiff" being a high volume trader who has

16  many trades during the class period.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in*

17  1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that . . . large investor[s] . . .

18  will represent the interests of the plaintiff class more effectively . . . .").  Further, Mr. Muller's

19  references to inapposite cases involving "day trading," an investment strategy that courts have

20  routinely held does not constitute a cognizable "unique defense" under Fed. R. Civ. P. 23, is doubly

21  irrelevant here because the undisputed evidence in the record is that Mr. Loos, who held 50,000

22  shares on the day of the first partially curative disclosure, was not a "day trader."  *See* McCormick

23  Decl., Ex. A.  Thus, Mr. Muller has offered no factual or legal basis to rebut the presumption in

24  favor of Mr. Loos to serve as the lead plaintiff here.

25  **II.     ARGUMENT**

26          **A.     Mr. Loos Has the Largest Financial Interest No Matter How Losses Are
                Calculated in This Case**

27

28              **1.     Mr. Loos Has The Largest Financial Interest Under FIFO**

1    Under FIFO, Mr. Loos has a loss of ***over $1.2 million***.  Mr. Muller has a loss of $196,161.20.

2  Thus, under FIFO, Mr. Loos has by far the largest financial interest among the competing movants

3  seeking appointment as lead plaintiff.  Mr. Muller contends that FIFO has been rejected as a proper

4  calculation of losses, and argues that Mr. Loos should not have used it to calculate his financial

5  interest here.  While some courts have chosen to use other similarly established accounting methods,

6  numerous courts have utilized FIFO to determine which lead plaintiff movant possesses the largest

7  financial interest out of lead plaintiff movants.  For instance, in *Cisco*, Judge James Ware of this

8  Court noted that "the first-in-first-out ('FIFO') accounting method . . . has been established as a

9  legitimate method for computing losses or gains from stock purchases or sales."  2004 U.S. Dist.

10  LEXIS 27008, at *11.  *See also Hodges*, 2009 U.S. Dist. LEXIS 103663, at *6 (in determining the

11  largest financial interest for lead plaintiff purposes, "[a] court may also look to the 'first-in, first-out'

12  ('FIFO') method, which measures loss by treating the first share purchased as the first share sold");

13  *Schering-Plough,* 2003 U.S. Dist. LEXIS 26297, at *26 (finding FIFO an acceptable method of loss

14  calculation at the class certification stage); *AOL*, 2006 U.S. Dist. LEXIS 17588, at *61-*62 ("both

15  FIFO and LIFO have been used to calculate the financial stake of movants for lead plaintiff status in

16  securities class actions"); *Veeco*, 233 F.R.D. at 333 (applying FIFO).  Consequently, courts have,

17  indeed, accepted the FIFO method as the proper means to calculate losses in PSLRA cases, and

18  therefore, the size of Mr. Loos's losses under the FIFO method is relevant to the determination of the

19  movant with "the largest financial interest in the relief sought" in this case.

20    **2.    Mr. Loos Has the Largest Financial Interest Under LIFO**

21    Mr. Muller argues that LIFO is the "preferred method" of calculating losses for determining a

22  movant's loss.  Even assuming Mr. Muller's argument that only the LIFO method is the correct way

23  to calculate losses on this motion – which, as demonstrated above, it is not – Mr. Loos ***still has a***

24  ***larger financial interest than Mr. Muller***.  Under a LIFO calculation, ***as admitted by Mr. Muller***

25  (*see* Muller Opp. at 5), Mr. Loos has a loss of $256,821.02, while Muller's LIFO loss is only

26  $196,161.20 – ***more than 25% less than Mr. Loos's***.  Thus, even under Mr. Muller's "preferred

27  method," Mr. Loos is the presumptive lead plaintiff.  *See Richardson*, 2007 U.S. Dist. LEXIS 28406,

28  at *11-*16 (appointing a movant who was a net seller because he still had a larger LIFO loss than the

other movant).

### 3. Mr. Loos Has the Largest Financial Interest Under the Net Shares Purchased Method

Mr. Muller's fall-back argument that the Court should find that he has the largest financial interest by looking at the number of "net shares purchased" is both factually and legally incorrect. Lead plaintiff decisions in this District look to competing lead plaintiff movants' relative losses to determine financial interest as the Class seeks to recover dollars in this action and the most precise measure of that is loss. *See Query v. Maxim Integrated Prods.*, 558 F. Supp. 2d 969, 974 (N.D. Cal. 2008) (finding movant had largest financial interest by citing to the movant's FIFO and LIFO loss); *Richardson*, 2007 U.S. Dist. LEXIS 28406, at *13-*14 ("Of the Olsten-Lax factors, courts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss.").

In contrast, because the price of a security will typically fluctuate during a class period, merely calculating the number of net shares a movant purchased (and/or sold) during such a period will not render a dollar loss calculation, but only a share count, which does not account for, or offers little assistance in assessing, prices paid or received, which can dramatically alter the amount of the out-of-pocket loss sustained on shares purchased during a class period. It is the dollar loss, of course, that reflects the plaintiff's potential recovery in the litigation. A "net shares purchased" analysis alone, however, will never lead to that figure. For that reason, even those courts that have looked at "net shares purchased" as a factor in determining the relative financial interests of competing lead plaintiff movants "typically equate 'largest financial interest' with the amount of potential recovery." *Siegall v. Tibco Software, Inc.*, No. C 05-2146 SBA, 2006 U.S. Dist. LEXIS 26780, at *11 (N.D. Cal. Feb. 24, 2006); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001). This is so because a plaintiff who suffers a $1,000 loss based on 100 net shares purchased has a far greater "financial interest in the relief sought by the class" than one who suffers only a $500 loss based on 300 net shares purchased. Mr. Muller, understandably, neglects to make the essential link between the number of net ***shares purchased*** and the ***net dollar loss*** sustained on

the remaining shares held after the fraud began to be revealed.  Therefore, he proposes the Court use a mathematically incomplete analysis that, by its own terms, results in nothing that will assist the Court in determining who has "the largest financial interest in the relief sought by the class" as required by the PSLRA (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)) and the Ninth Circuit's holding in *Cavanaugh*, 306 F.3d at 729-30.  As the Ninth Circuit noted, "the district court ***must consider the losses*** allegedly suffered by the various plaintiffs before selecting . . . the one who 'has the largest financial interest.'"  *Id*. (emphasis added; citation omitted).

Moreover, Mr. Muller's argument ignores the facts of this case and the requirements of loss causation.  Here, the potential recovery for class members will include damages suffered upon the partially curative disclosure by defendants on February 28, 2008 regarding an accounting misstatement.  *See* Complaint for Violation of the Federal Securities Laws, filed September 2, 2009, ¶29 (Dkt. No. 1).  Immersion stock responded to this revelation by plummeting by over $10 per share.  *Id.*, ¶30.  Class members who held Immersion shares before and after the February 28, 2008 revelation will seek to recover that stock price decline as part of their damages.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (recognizing loss causation with respect to intra-class period partial disclosures).  Thus, since it is included in the movants' "potential recovery," these losses are naturally also included in calculating each movant's financial interests for the purposes of selecting the lead plaintiff.  Even Mr. Muller cannot dispute this fact because he must rely entirely on the losses caused to him by the February 2008 disclosure since he ***sold all*** of his Immersion stock in December 2008 – well before the final disclosures at the end of the Class Period.[2]  Indeed, to have any losses at all, as an in-and-completely-out trader before the end of the Class Period, Mr. Muller must claim the existence of partially curative intra-Class Period disclosures that caused his loss or, as a matter of law, he would not have any cognizable securities claim.  *See In re Level 3 Commc'ns, Inc. Sec. Litig*, No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at *8 (D. Colo. May 4,

---

[2]      *See* Declaration of Michael Goldberg in Support of Norbert Muller's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Counsel, filed November 2, 2009, Ex. C (Dkt. No. 23).

1   2009) (movant sold a significant portion of its holdings prior to the first negative disclosure; "[i]t

2   would be difficult at best for [movant] to prove loss causation with respect to shares it sold 'before

3   the relevant truth begins to leak out' because the Supreme Court has held that in such cases, 'the

4   misrepresentation will not have led to any loss'") (citation omitted); *Ruland v. Infosonics Corp.*, No.

5   06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144, at *14-*15 (S.D. Cal. Oct. 23, 2006)

6   ("[T]here does not appear to be any allegation that the truth began to leak out before June 12, 2006

7   .. . . Therefore, the Court will not consider any losses suffered by Ordway as a result of transactions

8   prior to that date."); *In re CornerStone Propane Ptnrs*, No. C 03-2522 MHP, 2006 U.S. Dist. LEXIS

9   25819, at *30 (N.D. Cal. May 3, 2006) ("In the present action, defendants are correct in their

10  assertion that plaintiffs who sold their stock before July, 27 2001, when the first corrective disclosure

11  occurred, did not suffer any loss causally related to defendants' alleged misrepresentations.").

12          Here, to the extent the Court even considers the number of net shares purchased, based on a

13  "net shares purchased" analysis at the time of the February 2008 partial disclosure, Mr. Loos, who

14  had purchased 163,700 shares and sold 113,700, was still a net purchaser of 50,000 shares of

15  Immersion stock.   In contrast, Mr. Muller was a net purchaser of only 15,000 shares.   Thus,

16  irrespective of its very limited usefulness in determining which competing lead plaintiff movant has

17  the largest potential recovery in this litigation for the purposes of selecting the PSLRA lead plaintiff,

18  
19  Mr. Loos had over ***three times more*** net shares purchased than Mr. Muller.

20      **B.      Mr. Loos Is Not Subject to Any "Unique Defense" Based on His
                  Status as a So-Called "Net Seller" of Immersion Securities**

21  
22          **1.      Mr. Loos Was Not a "Net Gainer" but Rather a "Net Loser"
                      Under a LIFO Loss Calculation**

23          Unable to challenge Mr. Loos's overwhelmingly larger losses based on any recognized

24  method of calculating losses for the purposes of selecting a lead plaintiff, Mr. Muller argues that Mr.

25  Loos's status as a "net seller" – *i.e.*, someone who sold more shares than he purchased during a class

26  period, in and of itself creates an obstacle to his representation of the Class here.   Mr. Muller is

27  incorrect.   Indeed, the factor most relevant to the analysis of a so-called "net seller's" ability to

28  represent a class is whether that class member, overall, made money or lost money as a result of his

or her class period trades.  Courts have understandably found that net sellers who overall realized "**net gains**" in the company's stock should not serve as lead plaintiff.  Here, Mr. Muller **admits, by his own calculation**, that Mr. Loos not only did **not** have a net gain trading in Immersion stock, but, in fact, Mr. Loos suffered an overall **net loss** under LIFO of $256,821.02.  *See* Muller Opp. at 5.  Mr. Muller also admits that his own overall net LIFO loss was only $196,161.20.  *Id.*  Where a "net seller possesses a larger LIFO loss than all other competing movants, courts in this District appoint that "net seller" as the lead plaintiff.

For example, like here, *Richardson*, 2007 U.S. Dist. LEXIS 28406, at *11-*15, involved two competing lead plaintiff movants.  One movant challenged the appointment of the other claiming he was a "net seller" of the company's securities.  *Id.*  In rejecting the net seller argument, Judge Whyte aptly noted that under LIFO, the "net seller" movant had losses of $119,435.53, while the other movant had losses of $69,649.07.  *See id.* at *14.  Judge Whyte then distinguished the cases cited by the movant with the lower LIFO loss (like those Mr. Muller cites here), noting that "unlike *Cable & Wireless*, *Comdisco*, and *McKesson* in which the net sellers profited from the net sales, this case presents a situation in which the net seller has a greater financial loss than the net purchaser."  *Id.*  Consequently, Judge Whyte appointed the "net seller" as lead plaintiff, stating that he "is qualified to serve as the lead plaintiff."  *Id.* at *14-*15; *see also In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 20-21 (D. Mass. 2008) ("While defendants have cited cases stating that courts generally prefer 'net purchasers' to 'net sellers' as representative plaintiffs, there is scant support for the 'netting' methodology they propose; LIFO and FIFO are clearly the dominant methods for loss calculation.") (citation omitted).  Likewise, here, it is not Mr. Loos's status as a "net seller" that is relevant to the lead plaintiff analysis, but whether he was a "net gainer" or a "net loser."  It is undisputed that Mr. Loos suffered a net loss and that his net loss is over 25% larger than that of Mr. Muller.  Thus, Mr. Loos is the presumptive lead plaintiff and Mr. Muller cannot rebut that presumption.

**2.      Mr. Loos Is Not Subject to a Unique Defense as a Net Seller**

Mr. Loos is also neither "atypical" nor subject to a potential "unique defense" based on his status as a "net seller" because, when defendants in this case made their first partially curative disclosure on February 28, 2008, Mr. Loos still **held** 50,000 shares of Immersion stock.  Because all class members who purchased before February 28, 2008 and held those shares through that date, will seek to recover damages caused by the drop in Immersion's stock price resulting from that partial disclosure (including Mr. Muller who, given his sale of all his shares before the end of the Class Period, logically must base his claim for any damages on that disclosure), Mr. Loos would not even be considered a net seller at that pivotal point in the Class Period.

In *Richardson*, 2007 U.S. Dist. LEXIS 28406, at *18-*21, Judge Whyte found that an alleged "partial disclosure" of the truth of the company's financial condition prior to the end of the class period would support losses by the "net seller" and actually rendered the "net seller" typical since the entire class would want to recover the damage caused by the partial disclosure:

> Although TVIA's September 28, 2006 press release [prior to the end of the class period] announcing the dramatically lower revenue projections for Q2 2007 may not constitute an explicit corrective disclosure exposing the alleged fraud, Metzman may nevertheless be able to establish loss causation by demonstrating a causal connection between the alleged deceptive acts and the injury suffered.   Furthermore, the September 28, 2006 press release was immediately followed by the single greatest drop in share price, along with the highest trading volume, during the Class Period. In fact, the majority of approximate losses suffered by both movants resulted directly from this event.  It is not unlikely that other class members, as well as both movants, will seek to recover for this loss, and it is also not unlikely that defendants will raise the same loss causation defense against the entire class.  The court therefore cannot conclude that the potential vulnerability to a loss causation defense is unique to Metzman's case.  Pollard-Lowsley has not adequately rebutted Metzman's showing that he satisfies the typicality and adequacy requirements.

*Id.* at *20-*21; *see also In re NTL Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2006 U.S. Dist. LEXIS 5346, at *27-*41 (S.D.N.Y. Feb. 14, 2006).[3]

---

[3]      In *NTL*, the court, in deciding a motion for class certification, rejected defendants' challenge to the typicality of a plaintiff because he was a "net seller."  2006 U.S. Dist. LEXIS 5346, at *40-*41.  The plaintiff also had a LIFO loss like Mr. Loos does here.  In addition, there were partial disclosures in *NTL* which caused some of the plaintiff's loss, just as the plaintiffs in this case will show.  The *NTL* court found that the plaintiff's "situation is **typical** of others in the class – a need to show the drop in NTL's share price during the class period was not attributable to general factors but to 'dribbled' disclosures or 'leakage' of truthful information regarding NTL's prior

1        Similarly, in this case, both competing movants must predicate their loss/damages

2  calculations entirely on the partial disclosures, or neither will have a compensable claim.  *See Dura*,

3  544 U.S. at 346-47 (requiring a causal connection between revelation of the fraud and the plaintiff's

4  claimed loss).  Therefore, irrespective of whether or not Mr. Loos was ultimately an overall "net

5  seller" by the end of the Class Period, he nevertheless held 50,000 shares of Immersion stock at the

6  time of the first partially curative disclosure in this case, which makes his claims typical of the other

7  members of the class.  *See, e.g.*, *Seidman v. Am. Mobile Sys.*, 157 F.R.D. 354, 362 n.12 (E.D. Pa.

8  1994) ("the fraud-on-the-market theory assumes that the market will account for disclosed

9  information regarding a company's prior poor performance and price the stock accordingly") (citing

10  *Basic Inc. v. Levinson*, 485 U.S. 224, 243-44 (1988)); *Rubenstein v. Collins*, 162 F.R.D. 534, 538

11  (S.D. Tex. 1995) ("The simultaneous presence of a group of persons who bought stock before the

12  price of the stock went down, and a group of persons who bought after the price of the stock went

13  down does not preclude them from being part of the same class for class action purposes.").[4]  For

14  instance, in *Schering-Plough*, 2003 U.S. Dist. LEXIS 26297, at the class certification stage where

15  lead plaintiffs are subject to more rigorous scrutiny than at the lead plaintiff stage, defendants argued

16  that the lead plaintiff FSBA was a "net seller" of the company's stock and therefore an atypical

17  plaintiff.  The court found the defendants' argument perplexing because it noted that the plaintiff's

18  "Section 10(b) claim is based on losses that resulted from **purchases** of Schering-Plough stock made

19  **during** the Class Period.  Any capital gains made with respect to the **sale** of shares purchased **before**

20  the Class Period are irrelevant."  *Id.* at *26 (emphasis in original).

21

---

22  misrepresentations and/or omissions."  *Id.* (emphasis added).  Similarly, here, Mr. Loos held 50,000

23  net shares as of the date of the first partially curative disclosure.  Consequently, Mr. Loos's situation
is typical of the other class members who will claim damages resulting from that revelation
(including Mr. Muller).

24

25  [4]     The following is a non-exhaustive list of cases certifying classes of both ins-and-outs and
holders: *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 401 (D. Or. 1996); *In re AST

26  Research Sec. Litig.*, No. CV 94-1370 SVW(SHx), 1994 U.S. Dist. LEXIS 20850, at *12-*13 (C.D.
Cal. Nov. 10, 1994); *Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *20-

27  22 (N.D. Cal. Sept. 15, 1994); *In re Scorpion Techs., Inc. Sec. Litig.*, No. C 93-20333 RPA, 1994
U.S. Dist. LEXIS 21413, at *12-*14 (N.D. Cal. Aug. 1, 1994); *In re Unioil Sec. Litig.*, 107 F.R.D.

28  615, 622 (C.D. Cal. 1985).

C.      **Mr. Loos's Trading Does Not Render Him Atypical**

Mr. Muller also suggests, without factual or legal analysis, that because Mr. Loos engaged in "high volume" trading he is somehow atypical. Mr. Muller is again incorrect. This is an action based on the fraud-on-the-market doctrine, and "'[d]ifferences in sophistication, etc., among purchasers have no bearing in the impersonal market fraud context, because dissemination of false information necessarily translates through market mechanisms into price inflation which harms each purchaser identically.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 506 (9th Cir. 1992) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905-07 (1975)).

Furthermore, although the only two cases that Mr. Muller cites with his undeveloped "high volume" trading comment involved "day traders," Mr. Loos was not a "day trader."[5] Indeed, presumably because Mr. Loos's PSLRA certification, on its face, demonstrates that he was not a "day trader" and because Mr. Muller has no facts whatsoever to substantiate any position to the contrary, Mr. Muller does not even assert that Mr. Loos was a "day trader." However, even if Mr. Loos was a day trader, which he indisputably is not, his status as such would still be legally irrelevant. Not only are both of the cases Mr. Muller cites easily distinguishable from the situation here,[6] but being a "day trader" is not be a basis to challenge the suitability to serve as a class

---

[5]      As one court noted, "[t]he web site www.investorwords.com . . . defines a 'day trader' as a '[v]ery active stock trader who *holds positions for a very short time* and makes several trades each day. Day traders are individuals who are trying to make a career out of buying and selling stocks very quickly, often making dozens of trades in a single day and *generally closing all positions at the end of each day*.'" *Taubenfeld v. Career Educ. Corp.*, No. 03 C 8884, 2004 U.S. Dist. LEXIS 4363, at *10 n.2 (N.D. Ill. Mar. 22, 2004) (emphasis added). Unlike a "day trader," Mr. Loos was not completely in and out of the stock each day, nor did he generally close all positions at the end of the day. Rather, he held long 50,000 shares on the date of defendants' first partial curative disclosure. This demonstrates that Mr. Loos, like the other members of the class, was trading based upon the information available in the market – information which defendants had disclosed, as well as information they withheld.

[6]      In both cases the plaintiff at issue faced additional disabling problems with respect to their representation of the class that Mr. Muller has not – and cannot – raise here. In *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008), the court did not refuse to appoint a day trader as lead plaintiff based solely on his trading strategy, noting that "*a day trader is not ipso facto disqualified from the lead plaintiff role*," but rather rejected the movant based on serious questions as to his adequacy based on his signing a lead plaintiff certification with two different, competing lead plaintiff groups. *Id.* at *4 (emphasis added). In *In re Safeguard Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003), on a class certification motion following discovery on

1   representative or a lead plaintiff.

2          It is well established under the fraud-on-the-market doctrine that even investors who engage

3   in "erratic, counterintuitive, or speedy trading practices" have claims that are typical, because "[t]he

4   securities laws . . . exist for the protection of every investor, not just the conservative or wise

5   investor." *In re Electro-Catheter Sec. Litig.*, No. 87-41, 1987 U.S. Dist. LEXIS 13500, at *12

6   (D.N.J. Dec. 3, 1987) ("That one plaintiff may have decided to buy shares despite recent corporate

7   losses, or to buy and then quickly resell shares, does not make his or her case atypical.  Indeed,

8   where plaintiffs proceed on a fraud-on-the-market theory, all traders suffer equally from the alleged

9   unlawful price inflation regardless of their trading strategy or degree of sophistication.").  As the

10   court in *Moskowitz v. Lopp*, 128 F.R.D. 624 (E.D. Pa. 1989), explained:

11          It can be stated without fear of gainsay that the shareholders of every large, publicly
           traded corporation includes institutional investors, short-sellers, arbitragers etc.  The
12          fact that these traders have divergent motivations in purchasing shares should not
           defeat the fraud-on-the-market presumption absent convincing proof that price
13          played no part whatsoever in their decision making.  If defendants believe that this
           stretches the concept of reliance beyond the intent of the statute, their course of
14          attack is to overrule *Basic*, not render its holding meaningless.

15
   *Id.* at 631 (emphasis added).   Accordingly, "day traders" are routinely certified as class
16
   representatives in fraud-on-the-market cases such as this one. *See, e.g.*, *Crossen v. CV Therapeutics*,
17
   No. C 03-03709 SI, 2005 U.S. Dist. LEXIS 41396, at *17 (N.D. Cal. Aug. 10, 2005) (Illston, J.)
18
   (rejecting defendants' classification of the plaintiff as a day trader because he had relied upon
19
   defendants' false statements in his trading); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D.
20
   119, 123-24 (S.D.N.Y. 2001)  (certifying alleged day traders).[7]
21

22

23   _____

24   the issue, the court found a day trader's particular trading subjected him to unique defenses at the
     class certification stage because he purchased stock regardless of the fraudulent omissions.  *Id.* at
25   582.

26   [7]     *See also Saddle Rock Partners Ltd. v. Hiatt*, No. 96 Civ. 9474 (SHS), 2000 U.S. Dist. LEXIS
     11931, at *10-*14 (S.D.N.Y. Aug. 17, 2000) (held that unless colored or influenced by insider
27   information, momentum traders or day traders are clearly covered by the fraud on the market
     doctrine, as "the fact that [a momentum trader or a day trader] may have traded [securities] on the
28   basis of short term price drops which he believed to reflect market inefficiencies indicates that he

1    Therefore, Mr. Muller has offered no "proof" as required by the PSLRA, *see* 15 U.S.C. §78u-

2    4(a)(3)(B)(iii)(II), to rebut the presumption in favor of Mr. Loos as being the "most adequate

3    plaintiff," and there is absolutely no obstacle to Mr. Loos's ability to represent the class here.

4    ### III.    MR. MULLER IS ENTITLED TO NO DISCOVERY

5           The PSLRA does not permit discovery concerning the adequacy of a proposed lead plaintiff

6    absent a threshold showing that there is "a reasonable basis for finding that the presumptively most

7    adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).

8    Courts strictly adhere to this standard, very rarely granting discovery, and only when there is

9    evidence providing a reasonable basis to diverge from the general rule denying it. *In re Cendant*

10   *Corp. Litig.*, 264 F.3d at 270 n.49 ("[c]ourts must . . . take care to prevent the use of discovery to

11   harass presumptive lead plaintiffs, something that the Reform Act was meant to guard against.").

12

13   "The PSLRA is clear [that] a member of the purported plaintiff class must present 'proof' [that] the

14   presumptively most adequate plaintiff will not fairly and adequately protect the class or is subject to

15   unique defenses . . . Speculative assertions . . . are therefore insufficient to rebut the lead plaintiff

16   presumption . . .'" *Montoya v. Herley Indus.*, No. 06-2596, 2006 U.S. Dist. LEXIS 83343, at *5-6

17   (E.D. Pa. Nov. 14, 2006) (citations omitted).[8]

18

19

20   may have been relying on the integrity of the market to establish the more stable, longer term
     price"); *Kops v. Lockheed Martin Corp.*, No. CV 99-6171-MRP, slip op. at 15-16 (C.D. Cal. Nov.
21   10, 2003) (certifying day trader on the basis that while the plaintiff may have more active trading
     practices than other class members, this did not render him an inadequate or atypical representative)
22   (Declaration of Tricia L. McCormick in Support of Reply Memorandum in Further Support of John
     P. Loos's Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Selection of
23   Counsel, Ex. A, filed herewith); *Taubenfeld v. Career Educ. Corp.*, No. 03 C 8884, 2004 U.S. Dist.
     LEXIS 4363, at *12-*13 (N.D. Ill. Mar. 19, 2004) (PSLRA lead plaintiff decisions rejecting
24   argument that "day trader" was not typical or could not rely on the integrity of the market").

25   [8]    *See also In re SemGroup Energy Partners, L.P.*, No. 08-425, 2008 U.S. Dist. LEXIS 87218,
     at *7-8 (N.D. Okla. Oct. 27, 2008) ("The burden of proof of inadequacy of the presumptive lead
26   plaintiff rests with parties contesting its appointment. Challengers must provide a concrete showing
     of a conflict of interest to rebut the presumption of adequacy. Moreover, speculative assertions are
27   insufficient to rebut the lead plaintiff presumption. Mere innuendo and inferences will not suffice to

28

In the instant case, Mr. Muller has "produced not one iota of evidence to give the Court even a reasonable basis to authorize discovery." *Ferrari v. Impath, Inc*., No. 03-5667, 2004 U.S. Dist. LEXIS 13898, at *23-24 (S.D.N.Y. July 15, 2004) (refusing discovery of presumptive lead plaintiff). Muller's request for discovery from Mr. Loos, whose net losses make him the movant with the largest financial interest under LIFO or FIFO, is baseless.  Mr. Muller's proffered argument for his improper request for discovery is solely premised on a patently erroneous legal argument about Mr. Loos's trading in Immersion stock -- an argument  that no amount of discovery can improve since all of Mr. Loos's trades in Immersion stock are already before the Courts, they are entirely transparent, and Mr. Muller's request for discovery itself demonstrates he has no cognizable argument based on Mr. Loos's transactions.  Indeed, no court has permitted the kind of unsupported and facially futile fishing expedition that Mr. Muller seeks to engage in here.  Rather, courts are to 'take care to prevent the use of discovery to harass presumptive lead plaintiffs,' something the Reform Act was 'meant to guard against.'") (internal citation omitted) (McCormick Reply Decl., Ex. B).  Indeed, while Mr. Muller has not even attempted to meet his high burden to show facts providing "reasonable basis" to conduct discovery of Mr. Loos that courts, in the few instances out of the literally hundreds of lead plaintiff motions litigated since adoption of the PSLRA have required to allow any discovery at this stage, Mr. Muller's request does constitute an outright admission by him that it does not now possess any ***"proof"*** as required by the PSLRA to rebut the presumption in favor of Mr. Loos to be appointed lead plaintiff here.[9]

---

support allegations of atypicality, conflict of interest or unique defenses") (internal citations omitted).

[9]    The single case Mr. Muller relies on for his argument does not support his position, because that court did not authorize discovery based on the type of purely (albeit meritless) legal contention that Mr. Muller has alleges here that discovery cannot supported.  In *Prissert v. Emcore Corporation*, Civ. No. 08-1190 MV/RLP, slip op. (D.N.M. Sept. 25, 2009) (Goldberg Reply Decl., Dkt. 51, Ex. B), the issue was the undisclosed "complex structure" and "atypical investment

Because Mr. Muller lacks any factual predicate to request discovery, limited discovery should be denied.  *See SemGroup*, 2008 U.S. Dist. LEXIS 87218, at *9-10 (denying discovery of a lead plaintiff movant even though other movants argued that his former position and ownership interest created a unique defense); *In re: Oppenheimer Rochester Funds Group Sec. Litig.*, No. 09-md-02063-JLK-KMT, at 9 (D. Colo. Nov. 18, 2009) (denying discovery: "The PSLRA limits discovery relating to whether a member of a purported class is the most adequate plaintiff to situations in which the movant 'first demonstrates a reasonable basis' for its assertions of inadequacy.  [15 U.S.C. § 78u-4(a)(3)(b)(iv)]); *Ferrari,* 2004 U.S. Dist. LEXIS 13898, at *24 (denying lead plaintiff discovery); *Kinsey v. Network Associates, Inc.*, 77 F. Supp. 2d 1111, 1116 (N.D. Cal. 1999) (denying discovery of lead plaintiff movant absent showing of a reasonable basis).

## IV.    CONCLUSION

Thus under any recognized method of calculating losses or determining the financial interest of a lead plaintiff movant, not only does Mr. Loos have, by far, the greatest financial interest in the relief sought by the Class, he otherwise meets the requirements of Fed. R. Civ. P. 23(a)(3) and (4).  Therefore, Mr. Loos should be appointed as lead plaintiff, and his selection of Brower Piven, A Professional Corporation, as lead counsel for the Class and Coughlin Stoia Geller Rudman & Robbins LLP as liaison counsel, should be approved.

DATED:  December 4, 2009                    Respectfully submitted,

                                            COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
                                            DARREN J. ROBBINS
                                            TRICIA L. McCORMICK

                                            _____s/ TRICIA L. McCORMICK_____
                                                 TRICIA L. McCORMICK

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101

strategies" of a hedge fund that could not be divined from materials submitted to the court.  *See Id.*, at 7.  Here, Mr. Loos is a typical, large individual investor whose transactions at issue in the case are transparent and have been fully revealed to the Court in his own submissions.

1

Telephone:  619/231-1058
619/231-7423 (fax)

2

3

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLOW E. RADCLIFFE
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

4

5

6

[Proposed] Liaison Counsel

7

8

BROWER PIVEN
  A Professional Corporation
DAVID A.P. BROWER
488 Madison Avenue, Eighth Floor
New York, NY  10022
Telephone:  212/501-9000
212/501-0300 (fax)

9

10

11

[Proposed] Lead Counsel for the Class

12

C:\Documents and Settings\sarahm\Local Settings\Temporary Internet Files\_kd01!.DOC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List, and to:

Jack G. Fruchter
Abraham, Fruchter & Twersky, LLP
One Pennsylvania Plaza, Suite 2805
New York, NY 10119
212/279-5050
212/279-3655(Fax)

Ramzi Abadou
Erik D. Peterson
Barroway Topaz Kessler Meltzer
   & Check, LLP
580 California Street, Suite 1750
San Francisco, CA 94104
415/400-3000
415/400-3001(Fax)

David A.P. Brower
Brower Piven, P.C.
488 Madison Avenue, 8th Floor
New York, NY 10022
212/501-9000
212/501-0300(Fax)

Lionel Z. Glancy
Michael Goldberg
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
310/201-9150
310/201-9160(Fax)

Joe Kendall
Hamilton P. Lindley
Kendall Law Group, LLP
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
214/744-3000
214/744-3015(Fax)

Ira M. Press
Kirby McInerney LLP
825 Third Avenue, 16th Floor
New York, NY 10022
212/371-6600
212/751-2540(Fax)

Bruce G. Murphy
Law Offices of Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL 32963
772/231-4202
772/234-0440(Fax)

Howard G. Smith
Law Offices of Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
215/638-4847
215/638-4867(Fax)

Brian P. Murray
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, NY 10016
212/682-1818
212/682-1892(Fax)

Patrick V. Dahlstrom
Pomerantz Haudek Block Grossman
   & Gross LLP
10 South LaSalle Street, Suite 1000
Chicago, IL 60603
312/377-1181
312/377-1184(Fax)

1     I certify under penalty of perjury under the laws of the United States of America that the

2   foregoing is true and correct.  Executed on December 4, 2009.

3
                                        s/ TRICIA L. McCORMICK
4                                       TRICIA L. McCORMICK

5                                       COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
6                                       655 West Broadway, Suite 1900
                                        San Diego, CA  92101-3301
7                                       Telephone:  619/231-1058
                                        619/231-7423 (fax)
8
9                                       E-mail: triciam@csgrr.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 3:09-cv-04073-MMC

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,mbafus@fenwick.com,kayoung@fenwick.com,kdeleon@fenwick.com

- **David A.P. Brower**
  brower@browerpiven.com

- **Steven D. Cohn**
  scohn@kmllp.com

- **Michael M. Goldberg**
  info@glancylaw.com

- **Frank James Johnson**
  frankj@johnsonbottini.com,brett@johnsonbottini.com,paralegal@johnsonbottini.com,frankb@johnsonbottini.com

- **Felix Shih-Young Lee**
  flee@fenwick.com

- **Betsy Carol Manifold**
  manifold@whafh.com

- **Tricia Lynn McCormick**
  triciam@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,cprocida@fenwick.com,kdeleon@fenwick.com

- **Alan R Plutzik**
  aplutzik@bramsonplutzik.com

- **Jay L. Pomerantz**
  jpomerantz@fenwick.com,slim@fenwick.com,tfinlev@fenwick.com

- **Ira M. Press**
  ipress@kmllp.com,plinden@kmllp.com,lmorris@kmllp.com,slopez@kmllp.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Darren Jay Robbins**
  e_file_sd@csgrr.com

- **David C. Walton**
  davew@csgrr.com

- **Shawn A. Williams**
  shawnw@csgrr.com,ptiffith@csgrr.com,jdecena@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,cwood@csgrr.com,travisd@csgrr.com,e_file_sd@c

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)