United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK HODGES,<br>       Plaintiff,<br>  v.<br>IMMERSION CORPORATION, et al.,<br>       Defendants<br>_____/<br>MICHAEL POSNER,<br>       Plaintiff,<br>  v.<br>IMMERSION CORPORATION, et al.,<br>       Defendants<br>_____/<br>STEVEN H. BUELL,<br>  v.<br>IMMERSION CORPORATION, et al.,<br>       Defendants<br>_____/<br>ANDREW BENSON,<br>  v.<br>IMMERSION CORPORATION, et al.,<br>       Defendants<br>_____/ | No. C-09-4073 MMC<br>No. C-09-4118 MMC<br>No. C-09-4561 MMC<br>No. C-09-4744 MMC<br><br>**ORDER GRANTING JOHN P. LOOS'S MOTION FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; DENYING NORBERT MULLER'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF; DIRECTIONS TO PARTIES** |

Before the Court are two motions: (1) John P. Loos's ("Loos") Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Selection of Counsel, filed November 2, 2009; and (2) Norbert Muller's ("Muller") Motion for Consolidation of Related Actions, Appointment As Lead Plaintiff and Approval of Co-Lead Counsel, filed November 2, 2009. On November 25, 2009, each movant filed a memorandum in further support of his motion, and, on December 4, 2009, each movant filed a reply memorandum. Having read and considered the parties' respective submissions, the Court rules as follows.[1]

Under the Private Securities Litigation Reform Act ("PSLRA"), the district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." See 15 U.S.C. § 78u-4(a)(3)(B)(i). Before doing so, the district court shall first consolidate all actions asserting the same securities fraud claims. See 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Here, Loos and Muller are in accord that the above-captioned four actions allege the same securities fraud claims against the defendants named therein, and, accordingly, that the actions should be consolidated. The Court agrees, and will consolidate the four actions for all purposes. See id.[2]

The Court next turns to the question of which putative class member to appoint as lead plaintiff. In making that determination, the Court first must identify the "presumptively most adequate plaintiff," which "is the person or group of persons that -- (aa) has either filed the complaint or made a motion . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). With respect to the second of the above-listed factors, the district court

---

[1]By order filed December 16, 2009, the Court took the matters under submission.

[2]Defendants did not file a response or otherwise take a position as to the movants' respective requests for consolidation.

2

ascertains which movant has the largest loss and then, based only "on the information [such movant] has provided in his pleadings and declarations," determines if such movant "satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" See In re Cavanaugh, 306 F. 3d 726, 729-30 (9th Cir. 2002). After the presumptively most adequate plaintiff is identified, the district court next considers whether any other member of the putative class has "proof" to show the presumptively most adequate plaintiff should not be appointed. See id. at 730.

Turning first to the issue of which movant has the largest alleged loss, the Court, in calculating the alleged loss of each movant, "may select accounting methods that are both rational and consistently applied." See id. at 730 n. 4. Here, although the parties disagree as to whether the Court should use the "LIFO" or the "FIFO" accounting method, the Court finds it unnecessary to resolve such dispute, for the reason that, as Muller's own calculations demonstrate, Loos has a higher alleged loss under either method.[3]

Nonetheless, Muller argues, because Loos is a "net seller," i.e., Loos sold more stock during the putative class period than he purchased, the Court should find Muller, for purposes of § 78u-4(a)(3)(B)(iii)(I), has the "largest financial interest in the relief sought." See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). A "net seller's" motion for appointment as lead plaintiff is properly denied where the net seller obtained a "net gain" from its sales occurring in the putative class period. See, e.g., In re Comdisco Sec. Litig., 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001) (holding, where movant "derived a net gain of almost $300,000" from its sales during class period, movant, because it failed to show it suffered any loss, not entitled to appointment as lead plaintiff). As one district court has explained, "[b]ecause parties which are net sellers and net gainers, with respect to the relevant

---

[3]Under the FIFO method, Loos's alleged loss is $1,222,313,89, and, under the LIFO method, his alleged loss is $256,821.02. Muller, who states he sold all of his stock on the same day and at the same price, has an alleged loss of $196,161.20. Although, as Muller points out, the difference between the two movant's losses under the LIFO method is considerably less than under the FIFO method, Loos's alleged loss under the LIFO method nonetheless exceeds that of Muller by a figure representing more than 25% of Muller's loss.

3

securities transactions during the class period, may have more trouble proving damages at trial, courts frequently reject their applications to serve as lead plaintiffs." See Frank v. Dana Corp., 237 F.R.D. 171, 172 (N.D. Ohio 2006) (citing cases). By contrast, however, where a "net seller" is a "net loser," the net seller has incurred a cognizable loss and is the presumptive lead plaintiff where its net losses exceed those of the other movants. See Richardson v. TVIA, Inc., 2007 U.S. Dist. LEXIS 28406, *12-15 (N.D. Cal. 2007) (citing cases) (holding where, under LIFO method, "net loser" claimed losses in excess of other movant, "net loser" had "largest financial loss"); see also, e.g., Frank, 237 F.R.D. at 172-73 (N.D. Ohio 2006) (appointing "net seller" as lead plaintiff where net seller's losses exceeded those of other movant; finding "though [movant] may have been a net seller, it should have no trouble proving damages").

Here, as discussed above, Loos has a higher alleged loss, whether the LIFO or FIFO method is employed, and, consequently, has a greater financial interest in the relief sought than does Muller. Accordingly, the Court turns to the issue of whether Loos can satisfy the requirements of Rule 23, and considers at the outset only Loos's showing. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In that regard, Loos asserts, his claims are identical to those of the other putative class members, in that each putative class member's claim is that he or she purchased stock in Immersion Corporation after the price had been artificially inflated as a result of alleged false and misleading statements. Based thereon, the Court finds, for purposes of § 78u-4(a)(3)(B)(iii)(I), that Loos can satisfy Rule 23(a)'s commonality and typicality requirements, specifically, that there exist questions of law or fact common to the class, see Fed. R. Civ. P. 23(a)(2), and that Loos's claims are typical of the claims of the class, see Fed. R. Civ. P. 23(a)(3). Additionally, Loos has selected counsel experienced in securities litigation and states he is willing to provide testimony and to otherwise act on behalf of the other putative class members; Loos further states there is no conflict of interest between himself and the other putative class members. Based on such showing, the Court finds, for purposes of § 78u-4(a)(3)(B)(iii)(I), that Loos can satisfy Rule 23(a)(4)'s

requirement that he will fairly and adequately protect the interests of the class. See <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 957 (9th Cir. 2003) (holding "adequacy of representation" shown where, <u>inter alia</u>, lead plaintiff and his counsel do not have "conflicts of interest with other class members" and lead plaintiff and his counsel will "prosecute the action vigorously on behalf of the class"). Finally, although Loos does not expressly address the first of the Rule 23 requirements, that the potential class members be "so numerous that joinder of all members is impracticable," <u>see</u> Fed. R. Civ. P. 23(a)(1), the Court observes that each of the above-referenced complaints alleges there are hundreds, if not thousands, of potential class members;[4] accordingly, based on the limited information available at this early stage of the litigation, the Court finds Loos can satisfy the numerousity requirement.

Because the Court has found Loos has the largest alleged loss and can satisfy the requirements set forth in Rule 23(a), Loos is "the presumptively most adequate plaintiff." <u>See</u> <u>Cavanaugh</u>, 306 F. 3d at 730. The Court next considers whether Muller has "proof" to "rebut the presumptive lead plaintiff's showing." <u>See id.</u>

In that regard, Muller first argues that because Loos is a "net seller," he is subject to "unique defenses," which, according to Muller, indicates Loos cannot adequately represent the class. In support of this argument, Muller cites to cases in which the district court found a "net seller" was, under the circumstances presented, a "net gainer," and thus had no loss, <u>see</u>, <u>e.g.</u>, <u>Comdisco</u>, 150 F. Supp. 2d at 946, or that the "net seller" had, at most, a "small loss," <u>see</u> <u>Borochoff v. GlaxoSmithKline Plc</u>, 246 F.R.D. 201, 205 (S.D. N.Y. 2007). To the extent the cases on which Muller relies concern, however, the issue of whether a "net seller" is, in the first instance, a "presumptively most adequate plaintiff," such cases are distinguishable; to the extent they can be read to hold that, where a court has found a "net seller" to be the presumptively most adequate plaintiff, another movant can rebut such showing with evidence demonstrating the net seller had either a net gain or a minimal loss,

---

[4] For example, the complaint filed by Frank Hodges in Case No. 9-4073 alleges that "Immersion has over 27 million shares of stock outstanding, owned by hundreds if not thousands of persons." (<u>See</u> Compl. ¶ 21.) Such allegation, or one similar thereto, is included in the three other complaints.

5

1  Muller has failed to offer any such evidence. Cf. In re Schering-Plough Corp. Sec. Litig.,
2  2003 WL 25547564, *9 (D. N.J. 2003) (rejecting defendant's argument, made at class
3  certification stage, that "net seller" who incurred losses during class period would not
4  adequately represent class; noting plaintiff's "Section 10(b) claim [was] based on losses
5  that resulted from purchases of [defendant's] stock made during the Class Period" and,
6  consequently, that "[a]ny capital gains made with respect to the sale of shares purchased
7  before the Class Period [were] irrelevant") (emphasis in original).

8  Muller next argues a "day trader" cannot be an adequate representative because he
9  would be subject to unique defenses. As explained in one case upon which Muller relies, a
10 day trader "typically focuses on technical price movements rather than price," and, as such,
11 may be subject to a defense that he would have purchased the stock at issue "regardless
12 of the misstatement/omission." See In re Safeguard Scientifics, 216 F.R.D. 577, 583 (E.D.
13 Pa. 2003) (holding defendant "presented compelling reason to rebut the reliance
14 presumption," where defendant showed day trader plaintiff "increased his holdings in
15 [defendant's] stock even after the public disclosure of the alleged fraud"). Here, as Loos
16 points out, Muller has offered no evidence to support a finding that Loos is a "day trader,"
17 and, in any event, has not shown that even if Loos could be so characterized, his particular
18 trading activities would subject him to a defense that he would have purchased his shares
19 regardless of the alleged fraud, or that he is otherwise subject to a unique defense.

20 Finally, Muller argues that in the event the Court finds Muller has not rebutted the
21 presumption that Loos is the most adequate plaintiff, the Court should afford Muller leave to
22 conduct discovery as to Loos's adequacy.[5] "[D]iscovery related to whether a member or
23 members of the purported plaintiff class is the most adequate plaintiff may be conducted by
24 a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the
25 presumptively most adequate plaintiff is incapable of adequately representing the class."

---

[5]Alternatively, Muller requests, in his reply, that the Court appoint him as a "co-lead plaintiff." Assuming, arguendo, there may exist situations in which a district court should appoint two persons, who have no preexisting relationship, as co-lead plaintiffs, the Court finds no sufficient grounds exist herein to warrant such an appointment.

1  See 15 U.S.C. § 78u-4 (a)(3)(B)(iv) (emphasis added).  Here, Muller has failed to

2  demonstrate a reasonable basis for a finding that Loos is "incapable" of adequately

3  representing the class.  See id.  As discussed, Muller has failed to make any showing with

4  respect to whether Loos gained, rather than lost, as a result of the alleged fraud, nor has

5  Muller made any showing with respect to whether Loos is a day trader, let alone the type of

6  day trader who may be subject to a unique defense.  Consequently, Muller has failed to

7  demonstrate his entitlement to discovery.  See, e.g., Ferrari v. Impath, Inc., 2004 WL

8  1637053, *7 (S.D. N.Y. 2004) (holding, where putative class member "produced not one

9  iota of evidence" in support of theory presumptively most adequate plaintiff would be

10 incapable of adequately representing class, class member not entitled to discovery).

11         Accordingly, Loos's motion for appointment as lead plaintiff will be granted, and

12 Muller's competing motion will be denied.

13         Once a lead plaintiff is selected, the lead plaintiff "shall, subject to the approval of the

14 court, select and retain counsel to represent the class."  See 15 U.S.C. § 78u-4(a)(3)(B)(v).

15 Here, Loos has selected two law firms as counsel to represent the class, Brower Piven and

16 Coughlin Stoia Geller Rudman & Robbins LLP, the former to serve as Lead Counsel and

17 the latter to serve as Liaison Counsel.  Having reviewed their respective resumes (see

18 McCormick Decl., filed November 2, 2009, Exs. D, E), the Court, given each such firm's

19 experience with respect to class action securities litigation, finds good cause exists to

20 approve Loos's selections.

## CONCLUSION

22 For the reasons stated above,

23 1.  Loos's motion is hereby GRANTED and Muller's motion is hereby DENIED.

24 2.  The following cases are hereby CONSOLIDATED for all purposes:  Hodges v.

25 Immersion Corp., Case No. 09-4073 MMC; Posner v. Immersion Corp., Case No. 09-4118

26 MMC; Buell v. Immersion Corp., Case No. 09-4561 MMC; and Benson v. Immersion Corp.,

27 Case No. 09-4744 MMC.  All further filings in the instant consolidated action shall be filed in

28 Case No. 09-4073 MMC, and shall have the following caption:  In Re Immersion

Corporation Securities Litigation.

    3. Loos is hereby appointed lead plaintiff.

    4. Loos's selection of Brower Piven as Lead Counsel and Coughlin Stoia Geller Rudman & Robbins LLP as Liaison Counsel is, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), hereby APPROVED.

    5. Pursuant to the parties' stipulation filed October 15, 2009, and the parties' agreement therein that "following the appointment of a lead plaintiff and lead counsel, the parties shall meet and confer and submit a mutually agreeable schedule for the filing of a consolidated complaint (or designation of an operative complaint), if necessary, as well as for the briefing and hearing of responses thereto" (see Stipulation, filed October 15, 2009), the parties are hereby DIRECTED to meet and confer and to submit a stipulated schedule no later than January 8, 2010.

    **IT IS SO ORDERED.**

Dated: December 21, 2009

                                          MAXINE M. CHESNEY
                                          United States District Judge