1  SUSAN S. MUCK (CSB NO. 126930)
   smuck@fenwick.com
2  JENNIFER BRETAN (CSB NO. 233475)
   jbretan@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, California  94104
   Telephone:     (415) 875-2300
5  Facsimile:     (415) 281-1350

6  JAY L. POMERANTZ (CSB NO. 209869)
   jpomerantz@fenwick.com
7  FELIX S. LEE (CSB NO. 197084)
   flee@fenwick.com
8  FENWICK & WEST LLP
   Silicon Valley Center
9  801 California Street
   Mountain View, California 94041
10 Telephone:     (650) 988-8500
   Facsimile:     (650) 938-5200

11

12 Attorneys for Defendants Immersion Corporation,
   Victor A. Viegas, Clent Richardson, Stephen
   Ambler, Richard Vogel and Daniel Chavez

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16               SAN FRANCISCO DIVISION

17 In re IMMERSION CORPORATION          Case No.  CV 09-4073 MMC
   SECURITIES LITIGATION
18                                       CLASS ACTION
   This Document Relates to:
19                                      **NOTICE OF MOTION AND MOTION TO
   ALL ACTIONS                          DISMISS PLAINTIFF'S CONSOLIDATED
20                                       COMPLAINT; MEMORANDUM OF
                                         POINTS AND AUTHORITIES IN
21                                       SUPPORT THEREOF**

22                                      Hearing Date:  October 29, 2010
                                        Hearing Time: 9:00 am
23                                      Courtroom:      7

24                                      Judge: The Honorable Maxine M. Chesney

25                                      Date Action Filed:  September 2, 2009

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION .................................................................. 1

ISSUES TO BE DECIDED ................................................................................... 1

I.    PRELIMINARY STATEMENT ................................................................ 2

II.   STATEMENT OF FACTS ........................................................................ 4

      A.    Immersion And Its Business ............................................................ 4

      B.    Immersion Discloses The Audit Committee Investigation And
            Potential Restatement ..................................................................... 4

      C.    The Restated Financials Increase Fiscal 2007 Revenue And Defer
            Most Other Affected Revenue ......................................................... 5

      D.    Parties And Claims ......................................................................... 6

III.  LEGAL STANDARDS .............................................................................. 7

IV.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE IT
      FAILS TO ALLEGE PARTICULARIZED FACTS ESTABLISHING A
      STRONG INFERENCE OF SCIENTER AS TO EACH DEFENDANT ............. 8

      A.    Plaintiff's Accounting Allegations Fail to Raise a Strong Inference
            of Scienter ..................................................................................... 9

            1.    The Restatement Does Not Establish Scienter ................................ 9

            2.    Plaintiff Also Fails To Plead Scienter On The Basis Of SOX
                  Certifications Or Internal Control Deficiencies ........................... 11

      B.    The Alleged 2009 Side Agreement Does Not Establish Scienter ............. 12

      C.    Plaintiff's Confidential Witness Allegations Fail To Establish
            Scienter Because The Witnesses Are Unreliable And The Facts
            They Allege Do Not Support A Strong Inference Of Intent .................... 13

            1.    The Confidential Witnesses Do Not Purport to Have
                  Personal Knowledge of Facts that Raise a Strong Inference
                  of Scienter ..................................................................................... 14

            2.    Not One Of Plaintiff's Confidential Witnesses Alleges That
                  Defendants Committed Fraud ...................................................... 15

      D.    Plaintiff Cannot Salvage His Scienter Allegations By Reference To
            Defendants' Trading ..................................................................... 18

V.    SINCE DEFENDANTS VOGEL AND CHAVEZ ARE NOT ALLEGED
      TO HAVE MADE ANY FALSE STATEMENTS, PLAINTIFF FAILS TO
      STATE A CLAIM AGAINST THEM ............................................................... 20

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF CONTENTS**
**(continued)**

2

Page(s)

3

VI.    THE COMPLAINT FAILS TO PLEAD THE REQUIRED ELEMENT OF
       LOSS CAUSATION ........................................................................................... 21

4

5

VII.   THE COMPLAINT FAILS TO PLEAD A CONTROL PERSON CLAIM
       UNDER SECTION 20(a) ................................................................................... 24

6

VIII.  THE COMPLAINT FAILS TO PLEAD A CAUSE OF ACTION FOR
       INSIDER TRADING UNDER SECTION 20A ................................................... 24

7

IX.    CONCLUSION ................................................................................................. 25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Brodsky v. Yahoo! Inc.*,
    592 F. Supp. 2d 1192 (N.D. Cal. 2008) ................................................ 15, 25

*Brodsky v. Yahoo! Inc.*,
    630 F. Supp. 2d 1104 (N.D. Cal. 2009) ...................................................... 19

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997)...................................................................... 17

*DSAM Global Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002)................................................................... 2, 7

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)...................................................................... 8, 21, 23

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006)................................................................. 11

*Glazer Capital Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008)....................................................... 7, 11, 12, 17

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) ....................................................................... 8

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) .................................................................... 21

*In re 3Com Sec. Litig.*,
    1999 WL 1039715 (N.D. Cal. July 8, 1999) .............................................. 25

*In re Allergan Inc. Sec. Litig.*,
    1993 WL 623321 (C.D. Cal. Nov. 29, 1993) ............................................. 20

*In re Amgen Inc. Sec. Litig.*,
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) ..................................................... 21

*In re Cadence Design Sys., Inc. Sec. Litig.*,
    654 F. Supp. 2d 1037 (N.D. Cal. 2009) ................................................ 10, 16

*In re Century Aluminum Co. Sec. Litig.*,
    2010 WL 1729426 (N.D. Cal. Apr. 27, 2010) ........................................... 17

*In re Comshare, Inc. Sec. Litig.*,
    1997 WL 1091468 (E.D. Mich. Sept. 18, 1997),
     *aff'd*, 183 F.3d 542 (6th Cir. 1999) ......................................................... 13

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) ......................................................... 9

*In re Cornerstone Propane Partners, L.P.*,
    355 F. Supp. 2d 1069 (N.D. Cal. 2005) ..................................................... 10

*In re Daou Sys., Inc. Sec. Litig.*,
    411 F.3d 1006 (9th Cir. 2005)............................................................ 7, 22 23

*In re Dothill Sys. Corp. Sec. Litig.*,
    2009 WL 734296 (S.D. Cal. Mar. 18, 2009) ............................................. 21

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Downey Sec. Litig.*,
2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ................................................................. 8, 21

*In re Exodus Commc'ns, Inc. Sec. Litig.*,
2005 WL 1869289 (N.D. Cal. Aug. 5, 2005) .................................................................... 13

*In re Foundry Networks, Inc. Sec. Litig.*,
2003 WL 22077729 (N.D. Cal. Aug. 29, 2003) ............................................................. 2, 24

*In re Hansen Natural Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ....................................................................... *passim*

*In re Harmonic, Inc. Sec. Litig.*,
163 F. Supp. 2d 1079 (N.D. Cal. 2001) ............................................................................ 21

*In re Hypercom Corp. Sec. Litig.*,
2006 WL 1836181 (D. Ariz. July 5, 2006) ....................................................................... 12

*In re Int'l Rectifier Corp. Sec. Litig.*,
2008 WL 4555794 (C.D. Cal. May 23, 2008) .................................................................. 21

*In re Marvell Tech. Group Ltd. Sec. Litig.*,
2008 WL 4544439 (N.D. Cal. Sept. 29, 2008) ................................................................... 9

*In re Maxim Integrated Products, Inc. Sec. Litig.*,
639 F. Supp. 2d 1038 (N.D. Cal. 2009) ........................................................................... 23

*In re NextCard Inc. Sec. Litig.*,
2006 WL 708663 (N.D. Cal. Mar. 20, 2006) .................................................................... 21

*In re Pac. Gateway Exch., Inc. Sec. Litig.*,
169 F. Supp. 2d 1160 (N.D. Cal. 2001) ........................................................................... 10

*In re Rackable Sys., Inc. Sec. Litig.*,
2010 WL 199703 (N.D. Cal. Jan. 13, 2010) ..................................................................... 14

*In re Silicon Graphics Inc., Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999)....................................................................................... *passim*

*In re Silicon Image, Inc. Sec. Litig.*,
2007 WL 2778414 (N.D. Cal. Sept. 21, 2007),
*aff'd*, 325 Fed. Appx. 560 (9th Cir. 2009) ...................................................................... 14

*In re Silicon Storage Tech., Inc. Sec. Litig.*,
2006 WL 648683 (N.D. Cal. Mar. 10, 2006) .................................................................... 12

*In re Skechers U.S.A., Inc. Sec. Litig.*,
273 Fed. Appx. 626 (9th Cir. 2008) ................................................................................. 19

*In re Taleo Corp. Sec. Litig.*,
2010 WL 597987 (N.D. Cal. Feb. 17, 2010) .................................................................... 18

*In re U.S. Aggregates, Inc. Sec. Litig.*,
235 F. Supp. 2d 1063 (N.D. Cal. 2002) ................................................................. 11, 15, 16

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002)................................................................................... 18, 19

*In re Verifone Holdings, Inc. Sec. Litig.*,
2009 WL 1458211 (N.D. Cal. May 26, 2009) .................................................................... 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Verifone Sec. Litig.*,
11 F.3d 865 (9th Cir. 1993) .................................................................................. 24

*In re Verifone Sec. Litig.*,
784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir 1993) ................................ 24

*In re WatchGuard Sec. Litig.*,
2006 WL 2927663 (W.D. Wash. Oct. 12, 2006) ...................................... 12

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) .................................................................................. 9

*Kelley v. Rambus, Inc.*,
2008 WL 5170598 (N.D. Cal. Dec. 9, 2008) ........................................ 21

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .............................................................. 18

*Mathews v. Centex Telemanagement, Inc.*,
1994 WL 269734 (N.D. Cal. June 8, 1994) ...................................... 20

*McCasland v. FormFactor, Inc.*,
2008 WL 2951275 (N.D. Cal. July 25, 2008) ................................ 12, 17

*McCasland v. FormFactor Inc.*,
2009 WL 2086168 (N.D. Cal. July 14, 2009) ...................................... 10, 11

*Merck & Co. v. Reynolds*,
130 S. Ct. 1784 (2010) ................................................................ 7, 11

*Metawave Commc'ns Corp. Sec. Litig.*,
298 F. Supp. 2d 1056 (W.D. Wash. 2003) ................................ 12, 13, 14

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ...................................................... *passim*

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .............................................................. 24, 25

*Paracor Fin., Inc. v. General Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996) .............................................................. 24

*Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
673 F. Supp. 2d 718 (S.D. Ind. 2009) .............................................. 20

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .............................................................. 8

*Rudolph v. UTStarcom*,
560 F. Supp. 2d 880 (N.D. Cal. 2008) .......................................... 2, 10

*Shurkin v. Golden State Vintners Inc.*,
471 F. Supp. 2d 998 (N.D. Cal. 2006),
*aff'd*, 303 Fed. Appx. 431 (9th Cir. 2008) .................................. 8, 14

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
552 U.S. 148 (2008) ...................................................................... 7, 21

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
633 F. Supp. 2d 763 (D. Ariz. 2009), *vacated in part on other grounds*,
690 F. Supp. 2d 959 (D. Ariz. 2010)....................................................................... 22, 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)............................................................................................... 7, 8

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003).................................................................................. 17

*Weiss v. Amkor Tech., Inc.*,
527 F. Supp. 2d 938 (D. Ariz. 2007)........................................................................ 23

*Weitschner v. Monterey Pasta Co.*,
294 F. Supp. 2d 1102 (N.D. Cal. 2003) ................................................................... 18

*Zack v. Allied Waste Indus., Inc.*,
2005 WL 3501414 (D. Ariz. Dec. 15, 2005),
*aff'd*, 275 Fed. Appx. 722 (9th Cir. 2008) .............................................................. 19, 20

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)............................................................................... *passim*

**STATUTES**

15 U.S.C. § 78t-1 ...................................................................................................... 24

15 U.S.C. § 78t(a) ..................................................................................................... 24

15 U.S.C. § 78u-4(b)(1) .......................................................................................... 7, 15

15 U.S.C. § 78u-4(b)(2) ........................................................................................... 7, 8

15 U.S.C. § 78u-4(b)(3) ............................................................................................. 8

15 U.S.C. § 78u-4(b)(4) ............................................................................................. 21

15 U.S.C. § 78u-5(c)(1)(B) ........................................................................................ 18

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................. 1, 7

Fed. R. Civ. P. 12(b)(6)........................................................................................... 1, 8

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 29, 2010, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of The Honorable Maxine M. Chesney, United States District Court, Northern District of California, defendants Immersion Corporation ("Immersion" or the "Company"), Victor A. Viegas, Clent Richardson, Stephen Ambler, Richard Vogel and Daniel Chavez (the "Individual Defendants") will, and hereby do, move to dismiss with prejudice all claims asserted against them in plaintiff's Consolidated Complaint ("Complaint" or "Compl."). Defendants move pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") on the grounds that plaintiff has failed to allege facts sufficient to state a claim for violation of Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 ("1934 Act"). This motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; Defendants' Request for Judicial Notice ("RJN"); the Declaration of Susan S. Muck ("Muck Decl.") and accompanying exhibits thereto ("Ex.");[1] the [Proposed] Order; the pleadings and records on file herein; the argument of counsel; and such other matters as may be presented to the Court.

**ISSUES TO BE DECIDED**

1)      Should plaintiff's Section 10(b)[2] claim be dismissed for failure to state a claim on grounds that it: (i) fails to plead with particularity facts raising a strong inference of scienter as to any of the defendants, as required under the governing provisions of the PSLRA; and (ii) fails to plead loss causation as to any alleged misstatement?

2)      Should plaintiff's Section 20(a) claim be dismissed for failure to adequately allege an underlying violation of Section 10(b) or facts demonstrating the requisite control?

3)      Should plaintiff's 20A claim be dismissed on grounds that the Complaint: (i) fails

---

[1] Unless otherwise noted, all references to Exhibits ("Ex.") are to Exhibits to the Muck Declaration.

[2] Unless otherwise noted, all statutory references are to the 1934 Act.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   to plead an underlying violation of Section 10(b); (ii) fails to plead particularized facts

2   demonstrating that any defendant sold Immersion stock while in possession of material non-

3   public information; and (iii) fails to plead that plaintiff's trading was "contemporaneous" with

4   each defendant?

5   **I.        PRELIMINARY STATEMENT**

6           This is a case that centers on two categories of accounting adjustments announced by

7   Immersion in late 2009 and early 2010.  The first category involves non-revenue accounting

8   errors and had the effect of increasing the Company's income for fiscal 2007 – in other words,

9   Immersion learned that it had inadvertently *understated* its financial results for 2007.  The second

10  category consisted principally of shifting revenues from fiscal 2008 into fiscal 2009.  Armed with

11  little more than these unremarkable facts, plaintiff reflexively accuses Immersion and five current

12  or former officers of engaging in securities fraud.

13          As this Court has stressed, the PSLRA imposes stringent pleading standards in cases such

14  as this one.  *See, e.g., In re Foundry Networks, Inc. Sec. Litig.*, 2003 WL 22077729, at *2 (N.D.

15  Cal. Aug. 29, 2003) (Chesney, J.).  One of the PSLRA's most significant safeguards against

16  abusive litigation is the requirement to plead facts – as opposed to bald conclusions or speculation

17  – raising a strong inference of scienter, "the nefarious mental state necessary to constitute

18  securities fraud."  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir.

19  2002).  In the context of allegedly inaccurate financial statements, this obligates a plaintiff to

20  plead particularized factual allegations "showing that ... the defendants knew specific facts at the

21  time that rendered their accounting determinations fraudulent."  *Rudolph v. UTStarcom,* 560 F.

22  Supp. 2d 880, 889 (N.D. Cal. 2008).

23          The Complaint in this case is devoid of the requisite facts demonstrating that defendants

24  had contemporaneous knowledge of accounting errors.  Plaintiff suggests Immersion's eventual

25  restatement is somehow indicative of scienter.  However, that argument has been repeatedly

26  rejected by the Ninth Circuit and judges in this district.  Equally fruitless is plaintiff's purported

27  reliance on "confidential witnesses."  In fact, two of those sources were admittedly not even at the

28  Company during the relevant time period, and the other three do not purport to have personal

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   knowledge of facts demonstrating that any defendant was aware of accounting improprieties –

2   instead, they offer vague speculation or generic descriptions of various individuals' job duties and

3   responsibilities.  Again, those types of allegations have been routinely rejected as insufficient to

4   plead scienter under the PSLRA.  As a result, the Complaint must be dismissed.

5        Plaintiff also fails to plead (as he must) the element of loss causation, *i.e.*, that disclosure

6   of the alleged accounting fraud actually and proximately caused Immersion's stock price to

7   decline.  Before one word of a potential accounting issue was ever reported, the Company's stock

8   price was already in a long-running secular decline, falling from a one-day high of $20.50 in July

9   2007 to $4.94 just prior to the July 2009 announcement of the internal investigation, losses which

10   as a matter of law could not have been caused by the alleged fraud.  Furthermore, plaintiff

11   repeatedly refers to supposed "corrective disclosures" that, on their face, have nothing to do with

12   the underlying allegations of accounting improprieties.  The failure to plead loss causation

13   provides an independent basis for dismissal.

14        Perhaps even more noteworthy than plaintiff's pleading failures, however, are the

15   relatively few facts that are contained in the Complaint – because those facts actually *refute* any

16   suggestion of scienter and demonstrate that leave to amend would be futile.  As noted above, the

17   accounting errors uncovered by Immersion revealed that the Company should have reported

18   higher income in 2007 – a fact that cannot be squared with plaintiff's theory that defendants

19   engaged in a scheme to "fraudulently" inflate "revenue, earnings, sales and net income

20   throughout the Class Period."  Compl. ¶ 5.

21        Similarly, plaintiff makes reference to stock sales by some of the individual defendants,

22   ostensibly to show that they were trying to benefit from the alleged accounting "fraud" by selling

23   their holdings at inflated prices.  Putting aside that most of these transactions were pre-scheduled

24   trades pursuant to existing 10b5-1 plans, and that defendants actually purchased millions of

25   dollars of Immersion stock (a fact plaintiff assiduously ignores), the Complaint concedes that

26   virtually all of the "insider sales" occurred in 2007, at a time when Immersion *had understated its*

27   *income*.  In other words, rather than showing that defendants were dumping stock at a time when

28   insiders were supposedly aware of undisclosed adverse facts, *the Complaint actually pleads the*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*opposite*.

In sum, not only does the Complaint fail to satisfy the PSLRA's rigorous pleading standards, but plaintiff effectively concedes that he cannot do so. The Complaint should therefore be dismissed with prejudice.

## II.    STATEMENT OF FACTS

### A.    Immersion And Its Business

Immersion, a Delaware corporation, is a leading developer and licensor of haptics technologies—technologies that allow people to use their sense of touch more fully when operating a wide variety of digital devices. Compl. ¶ 11. During the period at issue, Immersion's business was divided into two segments: (i) the Touch Line of Business, which primarily licensed haptics technology to third parties; and (ii) the Medical Line of Business ("Medical"), which developed and sold medical simulation devices used by hospitals and universities to teach physicians and nurses how to perform medical procedures (such as laparoscopy and endoscopy) that require use of robotics and other instruments. Ex. A at 10, 13-17 (Form 10-K/A for the fiscal year ended December 31, 2008, filed with the Securities and Exchange Commission ("SEC") on February 8, 2010).[3] Plaintiff's Complaint focuses on events effecting solely the Medical line of business, which, in 2007, accounted for less than 1% of the Company's profits, and in 2008 and 2009, accounted for 18% and 49%, respectively, of Immersion's operating loss.[4]

### B.    Immersion Discloses The Audit Committee Investigation And Potential Restatement

On July 1, 2009, Immersion announced that its Audit Committee was conducting an investigation into certain revenue transactions in the Medical line of business. The announcement

---

[3] Consistent with a return to the Company's core licensing strategy, on March 30, 2010, Immersion announced the acquisition of much of its Medical simulation division, including a non-exclusive worldwide license for Immersion haptics technology used in medical training applications, by CAE Healthcare, a wholly-owned subsidiary of CAE, Inc. Ex. E (Form 8-K, filed with the SEC on March 31, 2010). Referenced herein, and attached to the accompanying Declaration, are SEC filings (or excerpts thereof). As set out in the accompanying Request for Judicial Notice, these filings are properly subject to judicial notice, and may be considered on a motion to dismiss. *In re Silicon Graphics Inc., Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (judicial notice of SEC filings appropriate).

[4] Ex. C at 44 (Form 10-K for the fiscal year ended December 31, 2009, filed with the SEC on March 30, 2010).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   noted that the Company had not yet determined the impact, if any, to Immersion's historical

2   financial statements.  Compl. ¶ 166.  Approximately six weeks later, on August 10, 2009, the

3   Company disclosed that certain accounting errors had been identified as a result of the

4   investigation and that Immersion's financial statements for the year ended December 31, 2008,

5   for the interim quarterly periods of 2008, and for the first quarter of 2009 (ended March 31, 2009)

6   should no longer be relied upon.  *Id.* ¶ 155.  The Company noted that correction of the errors

7   would likely require restatement of the Company's financial statements for those periods, that the

8   Audit Committee investigation was not yet complete, and that the Company was not yet in a

9   position to quantify any adjustments. *Id.* ¶ 166.

10  **C.     The Restated Financials Increase Fiscal 2007 Revenue And Defer Most Other**

11  **Affected Revenue**

12      Immersion ultimately reported two categories of financial adjustments.  The first,

13  announced on November 17, 2009, was unrelated in any way to Immersion's revenues.  It

14  involved corrections for (i) *non-revenue* accounting errors in the calculation of stock

15  compensation expense resulting from a software error, and (ii) *non-revenue* accounting errors in

16  the timing of interest income arising from Immersion's successful resolution of a patent litigation

17  with Sony.  Ex. D (Form 8-K, filed with the SEC on November 17, 2009); Compl. ¶¶ 144, 149.

18  Although these adjustments caused the Company to restate its 2007 financial statements, the

19  restatement revealed that income for fiscal 2007 had originally been *understated*.  Ex. A at 9;

20  Compl. ¶ 18.

21      The second category of adjustments – those based on the findings of the Audit Committee

22  investigation and related to changes to previously reported Medical revenue – were contained in

23  Immersion's restated financial statements filed on February 8, 2010.  Ex. A at 4-9; Ex. B at 4-8

24  (Form 10-Q/A for the quarter ended March 31, 2009, filed with the SEC on February 8, 2010).

25  As alleged in the Complaint and set forth in the 10-K/A, the investigation and restatement were

26  prompted by the discovery of an apparent side agreement relating to Medical product sales and

27  the determination that the corresponding revenue needed to be adjusted.  Notably, the vast

28  majority of revenue adjustments in the restatement simply shifted the revenue to a later period,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   for example, moving revenue previously reported in Q4 2008 to Q1 2009.  Ex. B at 6.

2   Ultimately, revenue for Q1 2009 was adjusted *upward* $1.35 million (net of taxes).  Ex. B at 8;

3   Compl. ¶ 20.

4        **D.        Parties And Claims**

5        The first of five securities class actions was filed on September 3, 2009.  Lead Plaintiff

6   filed his amended consolidated Complaint on April 9, 2010, two months after Immersion

7   completed its restatement.  Like its predecessors, the Complaint alleges a series of false

8   statements between May 2007 and July 2009 relating to Immersion's revenue, growth and

9   earnings.  Compl. ¶¶ 46-142.

10       The Complaint attributes misstatements concerning Immersion's financial performance to

11  defendants Victor Viegas (CEO until April 28, 2008), Stephen Ambler (CFO throughout the class

12  period), and Clent Richardson (CEO from April 28, 2008 through the end of the class period).

13  Compl. ¶¶ 46-133.  In addition, plaintiff names two other former officers who are not alleged to

14  be "speakers" of any purported misstatements:  Richard Vogel (General Manager of Medical

15  from March 2004 to July 2008), whose tenure with the Company ended long before the side

16  agreement that triggered the investigation and almost a year before the end of the purported class

17  period; and Daniel Chavez (interim General Manager of Medical beginning in August 2008 with

18  a formal appointment to the position in December 2008), whose affiliation with the Company

19  began more than halfway into the class period, and well after any alleged misconduct that took

20  place in 2007.  *Id.* ¶¶ 33-34.  Plaintiff also names the Company as a defendant.  *Id.* ¶ 29.

21       Plaintiff brings suit against all defendants under Section 10(b) of the 1934 Act and Rule

22  10b-5 promulgated thereunder.  Irrespective of the individual defendants' tenures with Immersion

23  (*e.g.*, Mr. Richardson first joined the Company in April 2008; Mr. Chavez on an interim basis in

24  August 2008), plaintiff alleges each individual defendant was motivated to recognize revenue

25  improperly so that Messrs. Viegas, Ambler and Vogel could profit from selling Immersion stock

26  at artificially inflated prices back in 2007.  Compl. ¶¶ 184, 206-208.  Plaintiff also sues each

27  individual defendant as a "control person" responsible for the purported acts of others (*id.* ¶ 210)

28  and sues Messrs. Viegas, Ambler and Vogel for insider trading pursuant to Section 20A (*id.* ¶¶

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

212-215).

## III.  LEGAL STANDARDS

To state a Section 10(b) claim, a plaintiff must plead facts demonstrating "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).  Section 10(b) claims are subject to the requirements of Fed. R. Civ. P. 9(b) and the PSLRA that fraud be pleaded with heightened particularity.  *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005); *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) ("By requiring specificity [the PSLRA] prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendants' alleged statements or omissions are deceitful.") (emphasis in original).

In addition, with respect to each alleged misstatement, plaintiff must establish a "strong inference that each defendant acted with scienter, the "nefarious mental state necessary to constitute securities fraud."  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002).  *See also* 15 U.S.C. § 78u-4(b)(1)-(2).  Scienter encompasses either the intent to defraud or deliberate recklessness.  *Silicon Graphics*, 183 F.3d at 976-77.  The complaint must contain "specific facts indicating no less than a degree of recklessness that strongly suggests actual intent" as to each defendant and each alleged misstatement.  *Id.* at 979.  *See also Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008).  Moreover, the scienter inference "must be more than merely plausible or reasonable – it must be *cogent and at least as compelling* as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007) (emphasis added).  Absent pleaded facts showing that "a defendant made a material misstatement *with an intent to deceive* – not merely innocently or negligently," no claim can be stated.  *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1796 (2010) (emphasis in original).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

To plead loss causation, a plaintiff must show that the diminution in value of his securities was actually and proximately caused by the alleged misrepresentations. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Generally this requires allegations sufficient to show that plaintiff purchased the securities at an artificially inflated price and that after the allegedly misrepresented information was revealed, the value of the securities declined. *See id.* at 342-43; *see also Metzler*, 540 F.3d at 1062-63.

A complaint failing to meet any of these pleading requirements must be dismissed. 15 U.S.C. § 78u-4(b)(3). Motions to dismiss were intended by Congress to serve as a powerful tool for protecting securities issuers from unwarranted litigation. *See Metzler,* 540 F.3d at 1055-56 ("Due in large part to the enactment of the Private Securities Litigation Reform Act ("PSLRA"), plaintiffs in private securities fraud class actions face formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P. 12(b)(6).") (citations omitted). Moreover, in assessing a securities complaint, *all* reasonable inferences must be considered – including those unfavorable to plaintiffs. *Tellabs*, 551 U.S. at 323; *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002). Indeed, "[i]n few other areas are motions to dismiss … so powerful." *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001).

## IV.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE PARTICULARIZED FACTS ESTABLISHING A STRONG INFERENCE OF SCIENTER AS TO EACH DEFENDANT

Plaintiff can survive a motion to dismiss only if he alleges particularized facts giving rise to a strong inference that each defendant knew, or with deliberate recklessness disregarded, that Immersion's statements were false at the time they were made. 15 U.S.C. § 78u-4(b)(2); *Silicon Graphics*, 183 F.3d at 979 ("[P]laintiffs proceeding under the PSLRA . . . must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent"); *Metzler*, 540 F.3d at 1066 (To meet the PSLRA's pleading standards, "the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made.") (quoting *Ronconi*, 253 F.3d at 432); *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1016 (N.D. Cal. 2006), *aff'd*, 303 Fed. Appx. 431 (9th Cir. 2008) (same); *see also In re Downey Sec. Litig.*, 2009

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   WL 2767670, at *8 (C.D. Cal. Aug. 21, 2009) (finding that "there is a total absence of factual

2   allegations that would permit a strong inference that the Individual Defendants knew that their

3   representations . . . were false or misleading when made or that the Individual Defendants acted in

4   deliberately reckless disregard of their truth or falsity.") (internal quotations omitted).  The

5   Complaint contains no such particularized facts.

6       Indeed, despite the passage of seven months since plaintiff first accused Immersion and

7   the individual defendants of "fraud," the Complaint can be read in vain for any particularized

8   facts showing scienter.  In their place, plaintiff relies on the restatement itself; assertions by five

9   confidential witnesses – not one of whom claims that any defendant knew of or deliberately made

10   a material misstatement; and a handful of small stock sales by three of the defendants, most of

11   which preceded the alleged misstatements that supposedly inflated the stock price.  As shown

12   below, plaintiff's restatement, confidential witness, and insider trading allegations fail to raise a

13   strong inference of fraud on the part of any defendant.

14       **A.**    **Plaintiff's Accounting Allegations Fail to Raise a Strong Inference of Scienter**

15           **1.**    **The Restatement Does Not Establish Scienter**

16       Plaintiff's central argument is a blanket pronouncement that "Immersion's restatement

17   establishes scienter" (Compl. ¶ 179) – a theory that has been repeatedly rejected by the courts in

18   the Ninth Circuit and elsewhere.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000

19   (9th Cir. 2009) ("the mere publication of a restatement is not enough to create a strong inference

20   of scienter"); *In re Verifone Holdings, Inc. Sec. Litig.*, 2009 WL 1458211, at *7 (N.D. Cal. May

21   26, 2009) (holding that "the necessity of a restatement is not enough, standing alone, to create a

22   strong inference of scienter"); *In re Marvell Tech. Group Ltd. Sec. Litig.*, 2008 WL 4544439, at

23   *6 (N.D. Cal. Sept. 29, 2008) (scienter is not established ". . . solely by pointing to the fact that

24   [the Company] restated its financial statements").  In the same vein, plaintiff's assertion of GAAP

25   violations also does not establish scienter.  *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996,

26   1012 (N.D. Cal. 2008) (stating that "restatements and acknowledgements of GAAP violations are

27   not enough to show scienter") (citation omitted); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d

28   1407, 1426 (9th Cir. 1994) ("The…complaint charges that [defendants]…violated GAAP and

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

GAAS, but clearly, even deliberate violations of those guidelines, without more, do not amount to fraud") (citation omitted). The law does not permit plaintiff to use the presence of a restatement and associated GAAP violations to escape his burden of pleading with particularity that "the defendants knew specific facts . . . that rendered their accounting determinations fraudulent." *Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 889 (N.D. Cal. 2008) (citation omitted); *see also In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005) ("[A]llegations of GAAP violations must be augmented by facts that shed light on the mental state of defendants, rather than conclusory allegations that defendant must have known of the accounting failures due to the degree of departure from established accounting principles.") (internal quotation marks omitted).[5] As set forth below, the Complaint does not come close to meeting this standard.

Moreover, contrary to plaintiff's claim, the extent and nature of the restatement does not support a different conclusion. As an initial matter, the financials indicate that net revenue was *understated* by $188,000 in 2007, a fact that eviscerates plaintiff's fraud theory.[6] Ex. A at 8; *McCasland v. FormFactor Inc.*, 2009 WL 2086168, at *8 (N.D. Cal. July 14, 2009) (no inference of scienter where alleged overstatement of costs and corresponding understatement of gross margins were "logical[ly] inconsisten[t]" with the "fraud theories asserted."). Furthermore, the 2007 restatement was based on *non-revenue* adjustments that even plaintiff does not characterize as nefarious, *i.e.*, an error in the third-party software used to calculate stock-based compensation expense, and a miscalculation of interest income recognized from the settlement of a patent litigation. Ex. D.[7] As for 2008, the vast majority of the revenue affected by the restatement was

[5] *See also In re Pac. Gateway Exch., Inc. Sec. Litig.*, 169 F. Supp. 2d 1160, 1167 (N.D. Cal. 2001) (plaintiffs must identify transactions and dollar amounts, and specific facts to support their belief that defendants were aware of the alleged fraud, including how or when each defendant became aware and the extent of each defendant's involvement); *In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1045 (N.D. Cal. 2009) (in order to support a strong inference of scienter based on GAAP violations, plaintiffs would have to allege that defendants were aware of the details of the licensing agreements alleged to have been improperly accounted for).

[6] It is axiomatic that restatement of the 2007 financials has no bearing on the scienter of Mr. Chavez, who did not join the Company until August 2008. Compl. ¶ 34.

[7] The Complaint argues the restatement is supportive of scienter because "[t]he restated items at issue were not due to simple mathematical error or honest misapplication of an accounting standard or oversight." Compl. ¶ 179(a). Yet the adjustments underlying the restatement of 2007

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

not reversed but merely deferred to a later period, with the total of just over $2 million being well below that supportive of a strong inference of scienter standing alone. Ex. A at 8; *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1067, 1073 (N.D. Cal. 2002) (finding no scienter on the basis of a $10 million restatement of net income, and distinguishing restatements which "involved . . . significantly larger amounts" and were accompanied by "additional, specific allegations that the defendants had actual knowledge of relevant facts from which scienter could be inferred").

Moreover, these revenue deferrals contributed to an *upward* total adjustment net of tax of almost $1.35 million in Q1 2009. Ex. B at 8. In other words, for financial statements covering *half of the purported class period* (fiscal 2007 and Q1 2009), the restatement reflected an *increase in revenues—*a result devastating to plaintiff's theory that defendants were knowingly inflating revenues. Compl. ¶ 179(e); s*ee McCasland*, 2009 WL 2086168, at *8. Consequently, in the absence of particularized facts showing that the restatement or any alleged GAAP violations were the product of intentional wrongdoing by these defendants, the Complaint should be dismissed. *Merck*, 130 S. Ct. at 1796 (innocent or negligent errors do not raise inference of scienter, absent particularized facts showing an "intent to deceive").

### 2. Plaintiff Also Fails To Plead Scienter On The Basis Of SOX Certifications Or Internal Control Deficiencies

Plaintiff fares no better when he argues that Sarbanes-Oxley certifications throughout the purported class period (Compl. ¶¶ 30-32, 164-165, 181) or disclosure of internal control deficiencies inherent in any restatement (Compl. ¶¶ 6, 157-165) provide a basis for inferring scienter. In *Glazer*, the Ninth Circuit joined its sister circuits in holding that the allegation that various defendants signed SEC filings and executed Sarbanes-Oxley certifications are insufficient to raise a strong inference of scienter. *Glazer Capital Mgmt.*, 549 F.3d at 747 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) for the proposition that there can be no inference of scienter based on SOX certifications because "'[i]f we were to accept [the plaintiff's] proffered interpretation of Sarbanes-Oxley, scienter would be established in every

financials were precisely that, and plaintiff makes no argument to the contrary.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  case where there was an accounting error or auditing mistake made by a publicly traded company,

2  thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.'").[8]

3        Likewise, vague allegations of internal control deficiencies cannot establish scienter.

4  "Presumably every company that issues a financial restatement because of GAAP errors will cite

5  as the reason a lack of effective internal controls." *In re Hypercom Corp. Sec. Litig.*, 2006 WL

6  1836181, at *9 (D. Ariz. July 5, 2006). For that reason, control deficiencies are not, in and of

7  themselves, indicative of knowing falsity. Any other result would permit a plaintiff to allege

8  scienter whenever there is a restatement, which would be anathema to the strict pleading

9  standards of the Reform Act. *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142,

10  1158 (C.D. Cal. 2007); *Hypercom*, 2006 WL 1836181, at *9.

11      **B.**      **The Alleged 2009 Side Agreement Does Not Establish Scienter**

12        When Immersion discovered an apparent side agreement in mid-2009, it notified the Audit

13  Committee, and the Committee began an investigation that resulted in the restatement. Ex. A at

14  4-7; Compl. ¶ 23. Rather than raising an inference of scienter, the steps taken by defendants

15  suggest exactly the opposite. *See In re WatchGuard Sec. Litig.*, 2006 WL 2927663, at *8 (W.D.

16  Wash. Oct. 12, 2006) (noting that a company's effort to investigate problems, including those

17  raised by existence of side letter, is "more consistent with an attempt to remedy problems than

18  with an intent to mislead investors").[9]

19        In *Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1078 (W.D. Wash.

20  2003), plaintiffs alleged that the defendant CEO and CFO knew of side agreements because (i)

---

21

22  [8] *See also Zucco*, 552 F.3d at 1004 (following *Glazer* in holding that SOX certifications, without more, are not indicative of scienter); *McCasland v. FormFactor, Inc.*, 2008 WL 2951275, at *9

23  (N.D. Cal. July 25, 2008) ("[T]he signing of quarterly certifications of financial statements mandated by the Sarbanes-Oxley Act (SOX) does not, without more, support an inference of

24  scienter."); *In re Silicon Storage Tech., Inc. Sec. Litig.*, 2006 WL 648683, at *21 (N.D. Cal. Mar. 10, 2006) (signing of an allegedly misleading Form 10-Q was insufficient to plead that he "made

25  false statements with scienter").

26  [9] Plaintiff wrongly tries to infer scienter based on the SEC's observation that a "side agreement" may be an "indicator that the original agreement was not final and revenue recognition was not

27  appropriate." Compl. ¶ 120. If anything, the Company's actions were consistent with the SEC's guidance: upon discovery of a side agreement, the Company undertook a voluntary and

28  immediate review of all revenue associated with the customer in question. *Id.* ¶¶ 8, 23. Such actions do not support a finding of scienter against any defendant.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

they interacted with the relevant customers; (ii) they traveled overseas to address a distributor's failure to timely pay invoices; and (iii) the CFO's employment was terminated upon discovery of the side letters. Unconvinced, the court granted the defendants' motion to dismiss, holding that it was insufficient for plaintiffs to rely "solely on their own conclusions regarding when [defendants] became aware of the side letters" instead of pleading specific facts. *Id.*

Even less is pled here. Generalized allegations that Mr. Richardson (as CEO) and Mr. Ambler (as CFO) were aware of sales to a Chinese customer (Compl. ¶¶ 127, 172), and that unnamed Asian customers did not timely pay invoices (*id.* ¶ 140), is no substitute for pleading particularized facts demonstrating that these defendants knew of a side agreement. *See In re Exodus Commc'ns, Inc. Sec. Litig.*, 2005 WL 1869289, at *18 (N.D. Cal. Aug. 5, 2005) (finding general allegation that customer "ultimately failed to pay" no basis for inferring defendants were aware at the time of the deal that customer was not creditworthy); *see also In re Comshare, Inc. Sec. Litig.*, 1997 WL 1091468, at *10 (E.D. Mich. Sept. 18, 1997), *aff'd*, 183 F.3d 542 (6th Cir. 1999) (noting that "[n]owhere does the complaint state which defendants knew what; or how or when they knew it. Simply alleging that the defendants knew or should have know [sic] of a problem . . . because of their position in the Company and the fact that documents were available to them does not raise a strong inference of fraudulent intent…").

**C.  Plaintiff's Confidential Witness Allegations Fail To Establish Scienter Because The Witnesses Are Unreliable And The Facts They Allege Do Not Support A Strong Inference Of Intent**

The Complaint's citation to assertions by various confidential witnesses fails to substantiate plaintiff's allegations of fraud. The Ninth Circuit has made clear that (i) "confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge" and (ii) any statements of confidential witnesses who meet those criteria "must themselves be indicative of scienter." *Zucco*, 552 F.3d at 995. Plaintiff's confidential witness allegations fail to meet this test.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

**1.      The Confidential Witnesses Do Not Purport to Have Personal Knowledge of Facts that Raise a Strong Inference of Scienter**

3

4

5

6

7

8

9

10

11

12

13

Before statements attributed to a confidential witness can be given any weight in assessing whether scienter allegations are adequate, a plaintiff must first establish that the witness was in a position to have personal knowledge of the asserted facts. *Zucco*, 552 F.3d at 995-96 (complaint must offer "sufficient detail about a confidential witness' position within the defendant company to provide a basis for attributing the facts reported by that witness to the witness' personal knowledge"); *In re Silicon Image, Inc. Sec. Litig.*, 2007 WL 2778414, at *2  (N.D. Cal. Sept. 21, 2007) (Chesney, J.), *aff'd*, 325 Fed. Appx. 560 (9th Cir. 2009) (dismissing complaint with prejudice where, *inter alia*, plaintiffs "fail[ed] to provide a factual basis for the conclusory opinions assertedly provided to plaintiffs by [confidential witnesses]"); *Metawave*, 298 F. Supp. 2d at 1068 ("[t]he Court must be able to tell whether a confidential witness is speaking from personal knowledge or 'merely regurgitating gossip and innuendo.'") (citation omitted).

14

15

16

17

18

19

20

21

22

23

24

25

Here, plaintiff trots his confidential witnesses in and out of the Complaint but never once ascribes to them first-hand knowledge of any impropriety or event giving rise to a strong inference of scienter. The lack of personal knowledge is most glaring in the case of **CW4**, who, according to plaintiff's own allegations, left the Company in March 2007, two months *before* the class period began.  Compl. ¶ 43.  Even if **CW4** disclosed facts to plaintiff which were suggestive of fraud (he did not), his allegations could not be based on first hand knowledge and are therefore unreliable as a matter of law.  *Silicon Image*, 2007 WL 2778414, at *2 (rejecting scienter assertions by confidential witness about events that post-date the term of his employment); *Shurkin*, 471 F. Supp. 2d at 1015 (confidential witness whose employment ended before the class period lacked personal knowledge of any activities during the class period); *In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 199703, at *8 (N.D. Cal. Jan. 13, 2010) (rejecting scienter assertions where confidential witnesses were not employed by company during the class period).

26

27

Similarly, **CW3** was only at the Company for three months in 2009.  Compl. ¶ 42. Consequently, any allegations made by **CW3** – innocuous as they are – cannot be used to support

28

Fenwick & West LLP
Attorneys At Law
Mountain View

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   an inference of scienter as to the other 24 months of the class period in 2007 and 2008.[10]  *Brodsky*

2   *v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1201 (N.D. Cal. 2008) ("a temporal mismatch between a

3   CW's statement and a Defendant's statement results in a failure to plead with particularity 'the

4   reason or reasons why the statement is misleading.'") (quoting 15 U.S.C. § 78u-4(b)(1)).

2.     **Not One Of Plaintiff's Confidential Witnesses Alleges That Defendants Committed Fraud**

7        Even if the confidential witnesses were deemed reliable, none of their statements is

8   "indicative of scienter."  *Zucco*, 552 F.3d at 995.  Although plaintiff sounds the drumbeat of

9   "CW" allegations over and over, *not one* of the confidential witnesses alleges that any defendant

10  intentionally misstated revenue, knew of the apparent side agreement, or knew of any material

11  accounting errors.  *See e.g.*, Compl. ¶¶ 39-44; *see U.S. Aggregates*, 235 F. Supp. 2d at 1074 (no

12  inference of scienter where confidential witness allegations are "too generalized and vague to

13  imply anything about the Company's financial disclosures").  If these confidential witnesses

14  were as highly placed and knowledgeable about Immersion as plaintiff contends, the fact that not

15  one of them ever asserts that a particular transaction was knowingly improperly recognized, or

16  makes any other specific allegation of fraud, puts the lie to plaintiff's claims.

17       Indeed, far from raising a strong inference of scienter, the bulk of the CW allegations are

18  plain vanilla statements describing routine job activities that do not even hint at fraud.  For

19  example, **CW5** alleges that, in his role as a controller, he conferred with his superiors in the

20  finance organization when making revenue determinations (Compl. ¶ 82); that Mr. Ambler, as

21  CFO, would make final decisions on revenue recognition (*id.* ¶ 126); that a decision was made in

22  2008 to centralize Medical product revenue recognition decisions under the corporate finance

23  umbrella (*id.* ¶¶ 126, 178); and that, as CEO, Mr. Richardson knew of sales to and had once met

24  with a customer in China (*id.* ¶ 172).  These assertions do little more than raise an inference that

[10] **CW3** alleges only that Immersion "prepared and tracked sales forecasts using a manual system" that was available "for anyone to see" (Compl. ¶ 174) – allegations that say nothing about fraud by these defendants, much less about what plaintiff claims defendants knew in 2007 or 2008, years prior to **CW3**'s short-lived tenure at the Company.  **CW3** is also the only confidential witness to even mention Mr. Chavez, making only the innocuous observation that he received a weekly sales forecast.  *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   people were doing their jobs.  *See Cadence*, 654 F. Supp. 2d at 1048 (finding that confidential

2   witness reports did not raise a strong inference of scienter where they did not provide concrete

3   allegations that defendants actually knew about the accounting errors – especially where

4   defendants may have been connected to the agreements at issue only through a long chain that

5   involved multiple personnel and levels of review).

6        Likewise, **CW1,** who plaintiff uses to suggest a fraud reaching back to 2007, alleges that

7   Medical was a small division with a small number of sales; sales were entered into a database;

8   **CW1** reviewed sales information to determine if revenue recognition criteria were met; and **CW1**

9   made recommendations either to recognize revenue or "sound the alarm" if criteria were not met.

10  Compl. ¶ 81.[11]  These activities do not create an inference of fraud; if anything, these activities

11  describe the job duties of any senior accountant of a sales organization.  Absent are any

12  particularized allegations of fraudulent revenue recognition.

13       **CW1** also claims that Immersion's CFO was directly responsible for making revenue

14  recognition decisions and that the Company tracked collection of accounts receivable.  Compl. ¶¶

15  171, 175.  Again, these allegations do not indicate knowledge by **CW1** of any fraudulent

16  accounting decisions, fabricated transactions, or knowing misstatements by the CFO or any other

17  defendant.[12]  *See U.S. Aggregates*, 235 F. Supp. 2d at 1074 (rejecting scienter allegations in

18

19  [11] Plaintiff goes on to suggest that CW1 had "disagreements" about recognizing revenue on
20  unspecified sales, at unspecified times, and to unspecified customers, and that **CW1** claims to
    have felt "bullied."  Compl. ¶¶ 83-84.  Disagreements on revenue recognition do not amount to
21  fraud, however and, unaccompanied by a single detail calling specific transactions into question,
    such undifferentiated allegations do not raise an inference of scienter.  *Zucco*, 552 F.3d at 998
22  (confidential witness allegations are not indicative of scienter if they merely evidence
    disagreement within the corporation over its accounting processes and not that management was
23  deliberately reckless).  Representative of **CW1's** cryptic allegations is his insinuation that, simply
    because a payment was received from an entity named "Peking Duck Restaurant," there exists a
24  specter of malfeasance. Compl. ¶ 141.  Given that neither plaintiff nor, apparently, CW1, can
    explain why such a payment was improper, it is clear that plaintiff is attempting to plead scienter
    based on innuendo as opposed to specific facts.

25  [12] Indeed, **CW1's** own description of the revenue recognition process acknowledges that it was
26  collaborative, and that the CFO worked with and relied upon a team of accountants, controllers,
    and finance VPs in making revenue recognition decisions.  Compl. ¶ 40.  Thus, the brand of
27  intentional fraud alleged here would have required that entire group to be complicit, including
    **CW1** himself.  *Id.*; *see also Cadence*, 654 F. Supp. 2d at 1048 (confidential witness reports not
    indicative of scienter when they confirm that transactions at issue involved multiple personnel
28  and levels of review).  Needless to say, **CW1** makes no such allegation.

MOTION TO DISMISS CONSOLIDATED
COMPLAINT; MEMORANDUM IN SUPPORT                    16                CASE NO. CV 09-4073 MMC
THEREOF

1   accounting fraud claim where "confidential witnesses [did not] have any first-hand knowledge of

2   [defendant's] accounting decisions").  Missing are the "who, what, when, and why" of any intent

3   to defraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (particularized

4   facts must be pled to show "'the who, what, when, where, and how' of the misconduct charged"

5   for each allegedly fraudulent misstatement or omission, on a defendant-by-defendant basis)

6   (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *Hansen Natural*, 527 F. Supp. 2d

7   at 1153.

8          Likewise, **CW2's** repeated assertion that certain unnamed Asian customers returned

9   product at unspecified times and for unspecified reasons (Compl. ¶¶ 125, 139, 173) is devoid of

10  the specificity required to show either that **CW2** is reliable or that the supposed returns give rise

11  to a strong inference of scienter.  *See McCasland*, 2008 WL 2951275, at *8 (confidential

12  witnesses will not support a strong inference of scienter where complaint did not supply adequate

13  corroborating details such as meetings, conversations, internal memoranda and reports provided

14  to defendants "that contradicted or even cast doubt on a public statement made during the class

15  period.").  Even with plaintiff's spin, **CW2** never suggests that Immersion or any individual

16  defendant knowingly misrepresented facts about customer returns, and plaintiff never explains

17  how such returns, even if known by the individual defendants, translates into intent to deceive.

18         **CW5** is also used to suggest fraud dating back to 2007 on the basis of his report that all

19  Medical sales were fully documented, that the documentation was submitted to the Corporate

20  Controller, and that **CW5** and the Corporate Controller conferred with CFO Ambler about

21  whether to recognize revenue on sales.  Compl. ¶ 82.  But these "facts" do not raise any inference

22  of scienter; this again is just a neutral description of what controllers and chief financial officers

23  do.  "[B]are allegations that . . . officers had access to financial statements and analyzed those

24  statements does not support the inference that defendants knew about the accounting error." *In re*

25  *Century Aluminum Co. Sec. Litig.*, 2010 WL 1729426, at *7 (N.D. Cal. Apr. 27, 2010) (citing

26  *Glazer Capital Mgmt.*, 549 F.3d at 746).  Moreover, how these facts could possibly suggest

27  intentional fraud in 2007, a period in which revenue was *understated*, is a mystery.

28         In sum, plaintiff found a handful of "confidential witnesses" willing to talk about their

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

jobs at Immersion.  What plaintiff did *not* find are confidential witnesses who claim to have knowledge of fraud by these defendants.[13]  The confidential witness allegations fail to satisfy plaintiff's burden of pleading particularized facts giving rise to a strong inference of intent.

**D.    Plaintiff Cannot Salvage His Scienter Allegations By Reference To Defendants' Trading**

Unable to make a particularized showing that defendants knowingly misstated any facts, plaintiff points to a handful of stale stock transactions to raise a strong inference of scienter. However, only allegations of "unusual" or "suspicious" insider trading during a class period can support a strong inference of scienter.  *Silicon Graphics*, 183 F.3d at 986 (noting that "insider trading is suspicious only when it is 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'") (citation omitted); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002).  Here, plaintiff identifies no unusual or suspicious trades – and no trades at all in 2008 or 2009.  Compl. ¶ 184-87.  The fact that not a single defendant sold Immersion stock during the periods in which plaintiff contends that defendants were fraudulently inflating Immersion's revenues – and indeed were *purchasing* shares during that time – eviscerates plaintiff's scienter theory.

Every one of the stock sales identified by plaintiff occurred in 2007, a period in which income was actually *understated* due to non-revenue based accounting errors not alleged to have been known by defendants (and which predated Messrs. Richardson and Chavez entirely). Compl. ¶ 18.  The majority (almost 70%) of these 2007 sales were made pursuant to 10b5-1 plans, rebutting any inference of scienter.  *Id*. ¶ 188; *Metzler*, 540 F.3d at 1067 n.11; *In re Taleo Corp. Sec. Litig.*, 2010 WL 597987, at *12 (N.D. Cal. Feb. 17, 2010) (noting that the timing of insider sales was not suspicious and did not raise inference of scienter where defendants traded pursuant to a Rule 10b5-1 plan); *see Weitschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102,

---

[13] Plaintiff's inability to plead scienter on the part of any defendant – whether through confidential witnesses or otherwise – is especially fatal with respect to various forward-looking statements referenced in the Complaint, *e.g.*, "I think you're going to see good growth" (Compl. ¶ 49) or "revenues from our medical line of business will increase" (Compl. ¶ 105).  While the Complaint's byzantine method of pleading makes it unclear which such statements are alleged to be false and why, in no instance does it come close to establishing the "actual knowledge" of falsity required to overcome the statutory safe harbor protections afforded to forward-looking statements.  15 U.S.C. § 78u-5(c)(1)(B).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1117 (N.D. Cal. 2003) (sales under pre-existing trading plans rebut inference that defendants were seeking to trade on the basis of material nonpublic information).[14]  Indeed, but for plaintiff's use of an artificially long class period, there would have been *zero stock sales by any defendant*.[15]

The modest number of shares sold also refutes any inference of scienter.  In asserting that certain defendants sold the bulk of their stock holdings, plaintiff ignores the governing law that "[a]ctual stock shares *plus exercisable stock options* represent the owner's trading potential more accurately than the stock shares alone." *Silicon Graphics*, 183 F.3d at 986-87 (emphasis added).  The Complaint tacitly acknowledges this fact—albeit buried in an exhibit—by listing defendants' percentage sales of holdings including vested options. *See* Compl., Exhibit A.  Calculated correctly, the numbers reveal that the sales were modest:  Ambler, 20.19%; Viegas, 9.72%; and Vogel, 3.59% (the Complaint concedes that Richardson and Chavez did not sell any stock during the class period).  Ex. F (Defendants' Form 4 filings for the relevant period).  Sales of this magnitude are in no way indicative of scienter.  *See e.g., Silicon Graphics*, 183 F.3d at 987 (finding sales of 43.6% of an individual's shares were not suspicious for purposes of scienter); *In re Skechers U.S.A., Inc. Sec. Litig.*, 273 Fed. Appx. 626, 628 (9th Cir. 2008) (finding sales of 17% and 42% were not suspicious).

Moreover, two individual defendants *purchased* stock during the class period, a fact which strongly negates any inference of scienter.  *See Zack v. Allied Waste Indus., Inc.*, 2005 WL 3501414, at *14 (D. Ariz. Dec. 15, 2005), *aff'd*, 275 Fed. Appx. 722 (9th Cir. 2008) (defendants'

---

[14] Nor can plaintiff infer scienter from sales that follow earnings releases.  Compl. ¶ 187.  Courts have repeatedly ruled that there is nothing suspicious about insider sales after earnings releases. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002) (noting that "[o]fficers of publicly traded companies commonly make stock transactions following the public release of quarterly earnings and related financial disclosures"); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1118 (N.D. Cal. 2009) (finding timing of insider sales following earnings releases not suspicious).

[15] Plaintiff's reliance on insider sales hinges entirely on his artificially extending the class period to maximize the number of alleged trades.  The Ninth Circuit criticized such gamesmanship in *Vantive*, where plaintiffs chose "an unusually long class period of sixty-three weeks . . . because *lengthening the class period has allowed plaintiffs to sweep as many stock sales into their totals as possible*, thereby making the stock sales *appear more suspicious* than they would be with a shorter class period."  283 F.3d at 1092 (emphasis added).  This tactic is especially unfair to defendants Vogel and Viegas, who resigned as officers of the Company a year or more before the class period ended, and long before the alleged side agreement was entered into.  Compl. ¶¶ 30, 33.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   purchases during the class period are "not actions demonstrating an intent to commit fraud, and

2   instead gives rise to an inference of good faith"); *In re Allergan Inc. Sec. Litig.*, 1993 WL

3   623321, at *23 (C.D. Cal. Nov. 29, 1993) (significant investments during class period rendered

4   plaintiff's claims of a fraudulent scheme to inflate revenues implausible).  Mr. Richardson and

5   Mr. Chavez purchased 8,675 and 2,000 shares respectively during the class period and neither

6   sold a single share. Ex. F.  Far from raising an inference of scienter, these purchases at

7   supposedly inflated prices negate an intent to commit fraud.  *Zack*, 2005 WL 3501414, at *14.

8          Finally, plaintiff's trading-based scienter allegations also fail to take into account that the

9   Company *bought back over $18 million* worth of its own shares during the purported class period.

10  Ex. A at 90.  Immersion's Board, including defendant Viegas, approved such purchases as part of

11  a $50 million open-market stock repurchase plan in November 2007.  *Id.*  Pursuant to the plan,

12  the Company acquired approximately $13.4 million worth of its own stock between November

13  2007 and September 2008 and another $5 million worth of stock during the fourth quarter of 2008

14  (the same fiscal quarter of the purported side agreement).  *Id.* at 38, 90.  No rational officer or

15  director would approve these purchases at a time he knew the stock was artificially inflated.  *See,*

16  *e.g., Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F.

17  Supp. 2d 718, 749 (S.D. Ind. 2009) ("[S]tock repurchase programs actually negate a finding of

18  scienter.") (citation omitted); *Mathews v. Centex Telemanagement, Inc.*, 1994 WL 269734, at *8

19  (N.D. Cal. June 8, 1994) ("It would have made no sense to purchase [the] stock if defendants

20  knew the prices to be inflated").

21  **V.    SINCE DEFENDANTS VOGEL AND CHAVEZ ARE NOT ALLEGED TO HAVE
        MADE ANY FALSE STATEMENTS, PLAINTIFF FAILS TO STATE A CLAIM
22      AGAINST THEM**

23         The gravamen of the Complaint is that statements regarding Immersion's revenues and

24  earnings were fraudulent at the time they were made.  As discussed in Section IV, plaintiff fails to

25  plead facts indicating that any of the alleged speakers (Messrs. Ambler, Richardson or Viegas)

26  knew of the supposed side agreement or deliberately made any misstatements.  Plaintiff's

27  allegations against Mr. Vogel and Mr. Chavez are even weaker, as neither defendant is alleged to

28  have made a single challenged statement, and both were not even employed by the Company for

MOTION TO DISMISS CONSOLIDATED
COMPLAINT; MEMORANDUM IN SUPPORT          20          CASE NO. CV 09-4073 MMC
THEREOF

significant portions of the class period (Mr. Vogel left Immersion in July 2008, and Mr. Chavez's affiliation as interim general manager did not begin until August 2008).  Compl. ¶¶ 33-34.

Plaintiff's attempt to impose liability for supposed corporate misstatements on non-speaking defendants Vogel and Chavez flies in the face of the PSLRA.  Numerous courts in the Ninth Circuit have correctly held that to be liable for securities fraud, a "defendant must actually make a false or misleading statement."  *Hansen Natural*, 527 F. Supp. 2d at 1153 n.3 (dismissing individual defendants who did not make any statements); *see also In re Harmonic, Inc. Sec. Litig.*, 163 F. Supp. 2d 1079, 1099 (N.D. Cal. 2001) (granting motion to dismiss and explaining "[t]here can be no liability under § 10b unless the defendant made a false or misleading statement"); *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *11 (C.D. Cal. May 23, 2008) (dismissing claim with prejudice where "[i]n the almost 100 pages of the Complaint specifying the misrepresentations and omissions at issue, not a single misrepresentation or omission is attributed to" defendants).[16]  Accordingly, the Complaint fails to state a claim against either of these non-speaking defendants, and should therefore be dismissed on those grounds.  *Id.*

## VI.   THE COMPLAINT FAILS TO PLEAD THE REQUIRED ELEMENT OF LOSS CAUSATION

Plaintiff's Complaint must also be dismissed because it fails to plead the element of loss causation.  15 U.S.C. § 78u-4(b)(4); *Dura,* 544 U.S. at 338.  As the Supreme Court has recognized, stock price declines can be caused by a myriad of factors unrelated to fraud.  *Id.* at 343 (noting "that [a] lower [stock] price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions or other events…").  Consequently, to avoid dismissal a shareholder

_____

[16] The discredited group pleading doctrine also will not save plaintiff's claims against these non-speaking defendants.  *See Downey,* 2009 WL 2767670, at *4 n.1 (noting that "the group pleading doctrine did not survive the PSLRA"); *In re Dothill Sys. Corp. Sec. Litig.*, 2009 WL 734296, at *12 (S.D. Cal. Mar. 18, 2009) (same); *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *6 (N.D. Cal. Dec. 9, 2008) (same); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1036 (C.D. Cal. 2008) (same); *In re NextCard Inc. Sec. Litig.*, 2006 WL 708663, at *3 (N.D. Cal. Mar. 20, 2006) (same).  Nor does plaintiff plead facts showing that these defendants "substantially participated" in the preparation of alleged misstatements or can be held liable for participation in a fraudulent scheme.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000); *Stoneridge*, 552 U.S. at 160.

21

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    plaintiff must plead facts which demonstrate that losses suffered from stock price drops were

2    brought about by the alleged fraud and not some other cause.  *Daou Sys.*, 411 F.3d at 1026 (A

3    complaint must plead sufficient facts to show "that the drop in [a company's] stock price was

4    causally related to [the defendant's] financial misstatements…") (citation omitted).

5        Plaintiff attempts to satisfy this requirement by citing to four "corrective disclosures" that

6    purportedly caused Immersion's stock price to fall and thereby damaged the shareholder class.

7    Compl. ¶¶ 191-194.  However, a "corrective disclosure" is one that "*reveals the fraud, or at least*

8    *some aspect of the fraud, to the market*."  *Teamsters Local 617 Pension and Welfare Funds v.*

9    *Apollo Group, Inc.*, 633 F. Supp. 2d 763, 818 (D. Ariz. 2009), *vacated in part on other grounds*,

10   690 F. Supp. 2d 959 (D. Ariz. 2010) (emphasis added, citation omitted).  Not one of the four

11   alleged corrective disclosures reveals any prior misstatement or other misconduct, and therefore

12   as a matter of law, the associated stock price declines cannot be linked to fraud.  *Metzler,* 540

13   F.3d at 1063 ("the complaint must allege that the practices that the plaintiff contends are

14   fraudulent were revealed to the market").

15       For instance, according to plaintiff the first two alleged disclosures – on July 31, 2008 and

16   March 2, 2009 – were corrective because they "partially disclosed that Immersion's business was

17   not doing as well as defendants has led investors to believe."  Compl. ¶¶ 191-192.  The Ninth

18   Circuit has held, however, that a disclosure can only be corrective for loss causation purposes if

19   "the market learned of and reacted to th[e] *fraud*, as *opposed to merely reacting to reports of the*

20   *defendant's poor financial health generally*."  *Metzler*, 540 F.3d at 1063 (emphasis added,

21   citation omitted).  Both the July 31 and March 2 announcements were run-of-the-mill earnings

22   releases that did not disclose any prior misstatement or fraud – they merely reported financial

23   results that fell short of market expectations.  Compl. ¶¶ 191-192.  They therefore cannot serve as

24   the basis for pleading loss causation.  *Metzler*, 540 F.3d at 1063; *Hansen Natural*, 527 F. Supp.

25   2d at 1162 (ruling that loss causation had not been plead because "none of the three public

26   disclosures referenced in Plaintiff's Complaint contains a disclosure of wrongdoing").

27       The same holds true for the earnings release on May 4, 2009.  Compl. ¶ 193.  Plaintiff

28   asserts that the release disclosed that "Immersion was having difficulty receiving payments from

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   certain international customers" (*id.*), ignoring the fact that this disclosure does not even suggest

2   that any prior statement was false or misleading.  *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d

3   938, 947 (D. Ariz. 2007) (denying that a disclosure was corrective in nature given that it "says

4   nothing about prior alleged false statements").  At best, such a disclosure only pointed to the

5   *possibility* of issues with foreign accounts, without even a hint of fraud or misconduct, which is

6   insufficient to plead loss causation.  *Metzler,* 540 F.3d at 1064 ("[N]either *Daou* nor *Dura* support

7   the notion that loss causation is pled where a defendant's disclosure reveals a 'risk' or 'potential'

8   for widespread fraudulent conduct"); *In re Maxim Integrated Products, Inc. Sec. Litig.*, 639 F.

9   Supp. 2d 1038, 1045 (N.D. Cal. 2009) (same).

10         The last supposed corrective disclosure cited by the Complaint – the July 1, 2009

11   announcement that the Company was conducting an internal investigation into revenue

12   transactions – is equally defective.  Compl. ¶ 194.  Courts have repeatedly held that the mere

13   announcement of an investigation, before any finding of wrongdoing, cannot serve as a corrective

14   disclosure.  *Hansen Natural*, 527 F. Supp. 2d at 1162 ("the mere existence of [an] investigation

15   cannot support any inferences of wrongdoing or fraudulent scienter on the part of [a] company or

16   its senior management") (citation omitted); *Weiss*, 527 F. Supp. 2d at 946 (announcement of

17   special committee investigation cannot be deemed a corrective disclosure); *Teamsters*, 633 F.

18   Supp. 2d at 821 ("the court agrees with those courts finding that standing alone the announcement

19   of an internal investigation does not give rise to a viable loss causation allegation"); *Maxim*, 639

20   F. Supp. 2d at 1047 (same).[17]  Thus, given that none of the corrective disclosures cited by plaintiff

21   can serve as a basis for loss causation, the Complaint must therefore be dismissed.  *Dura,* 544

22   U.S. at 338; *Metzler,* 540 F.3d at 1063.

23

24   [17] Even under plaintiff's theory that the disclosures cited in the Complaint were corrective for loss
causation purposes, plaintiffs' admission that the first disclosure did not take place until July 31,
2008 eviscerates the bulk of any claim for economic loss.  Compl. ¶ 191.  By necessity, any
25   decline in a company's stock price prior to a corrective disclosure could not have been caused by
fraud.  *Daou*, 411 F.3d at 1027 (ruling that any decline in stock price prior to a corrective
26   disclosure "cannot be considered causally related" to fraud and is therefore inactionable).  Thus,
the entirety of Immersion's stock price decline from its high of $20.50 in July of 2007 (Compl. ¶
27   7) to $7.05 prior to the first corrective disclosure by definition were caused by factors other than
fraud and therefore cannot be recoverable on loss causation grounds.  *Meltzer*, 540 F.3d at 1063
28   (loss causation not adequately plead for losses prior to the first alleged corrective disclosure).

VII.   **THE COMPLAINT FAILS TO PLEAD A CONTROL PERSON CLAIM UNDER SECTION 20(a)**

Absent an underlying violation of the 1934 Act, there is no claim for control person liability under Section 20(a). *Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996). Because plaintiffs have failed to plead that any defendant violated Section 10(b) or Rule 10b-5, the control person claim against these defendants fails.

The Section 20(a) claim must also be dismissed for failure to show any defendant acted to "induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). The opposition rests largely upon the defendants' positions at the Company to allege control (Compl. ¶¶ 38, 210), an approach which cannot pass muster under the governing law. *Paracor*, 96 F.3d at 1163 (status as an officer or director does not create any presumption of control for purposes of establishing control person liability). Nor can plaintiff salvage these claims with rote assertions that defendants "control the conduct of Immersion's business" or that they "had the power and authority to cause Immersion to engage in the wrongful conduct." Compl. ¶¶ 38, 210. Such generic assertions untethered in any specific way to the alleged wrongdoing are fatally flawed, as "boilerplate allegation[s] are insufficient to state a claim for control person liability." *Hansen*, 527 F. Supp. 2d at 1163. The Section 20(a) claim should therefore be dismissed.

VIII.   **THE COMPLAINT FAILS TO PLEAD A CAUSE OF ACTION FOR INSIDER TRADING UNDER SECTION 20A**

Plaintiff purports to assert an insider trading claim under Section 20A of the 1934 Act against Mr. Viegas, Mr. Ambler and Mr. Vogel (but not Mr. Richardson or Mr. Chavez, who are not alleged to have sold any Immersion stock). Section 20A requires, *inter alia*, an underlying violation of the 1934 Act. *In re Verifone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993); *Foundry*, 2003 WL 22077729, at *16. Because plaintiff has failed to plead a 10(b) violation, the Court should dismiss plaintiff's claim under Section 20A.

In addition, Section 20A only applies to persons who trade contemporaneously with the alleged insider. 15 U.S.C. § 78t-1; *Neubronner v. Milken*, 6 F.3d 666, 669 n.5 (9th Cir. 1993); *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1488 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir 1993). Plaintiff does not even purport to identify any contemporaneous trades with Mr. Viegas or

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Fenwick & West LLP
Attorneys At Law
Mountain View

1   Mr. Ambler, so the Section 20A claim against them fails for that reason alone. *See id.* at 1488-89.

2   More fundamentally, plaintiff's 20A claims fail because the Complaint lacks

3   particularized facts establishing that defendants sold Immersion stock on the basis of material

4   non-public information. *Brodsky*, 592 F. Supp. 2d at 1208 (dismissing Section 20A claim

5   because plaintiffs "fail[ed] to identify any specific material nonpublic information in the

6   possession of any Defendant at the time of a specific trade"); *see also Neubronner*, 6 F.3d at 672

7   (allegations must include "the times, dates, places, benefits received, and other details of the

8   alleged fraudulent activity"). Although plaintiff offers the cursory allegation that defendants were

9   "in possession of material, non-public information" (Compl. ¶ 185), such catch-all pleading is no

10  substitute for alleging "specifically what information [each defendant] obtained, when and from

11  whom he obtained it, and how he used it for his own advantage." *Neubronner*, 6 F.3d at 672; *see*

12  *also In re 3Com Sec. Litig.*, 1999 WL 1039715, at *8 (N.D. Cal. July 8, 1999) (finding mere

13  allegation that defendants possessed the "'material adverse non-public information about USR

14  and 3Com . . . when they sold their shares of stock'" as being "too conclusory to give rise to

15  liability for insider trading under Section 20A").

16  **IX.    CONCLUSION**

17  For all the foregoing reasons, plaintiff's Complaint fails to state a claim and must be

18  dismissed.

19  Dated: June 15, 2010                          FENWICK & WEST LLP

20

21                                               By:_____/s/ Susan S. Muck_____
                                                     Susan S. Muck, Esq.
22                                                   555 California Street, 12th Floor
                                                     San Francisco, California  94104
23                                                   Telephone: (415) 875-2300
                                                     Facsimile: (415) 281-1350
24
                                                 Attorneys for Defendants Immersion
25                                               Corporation, Victor A. Viegas, Clent
                                                 Richardson, Stephen Ambler, Richard Vogel
26                                               and Daniel Chavez

27

28