1  SUSAN S. MUCK (CSB NO. 126930)
   smuck@fenwick.com
2  JENNIFER BRETAN (CSB NO. 233475)
   jbretan@fenwick.com
3  MARIE C. BAFUS (CSB NO. 258417)
   mbafus@fenwick.com
4  FENWICK & WEST LLP
   555 California Street, 12th Floor
5  San Francisco, California  94104
   Telephone:     (415) 875-2300
6  Facsimile:     (415) 281-1350

7  JAY L. POMERANTZ (CSB NO. 209869)
   jpomerantz@fenwick.com
8  FELIX S. LEE (CSB NO. 197084)
   flee@fenwick.com
9  FENWICK & WEST LLP
   Silicon Valley Center
10 801 California Street
   Mountain View, California 94041
11 Telephone:     (650) 988-8500
   Facsimile:     (650) 938-5200
12
   Attorneys for Defendants
13 Immersion Corporation, Victor A. Viegas,
   Clent Richardson, Stephen Ambler and Richard Vogel
14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re IMMERSION CORPORATION SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No.  CV 09-4073 MMC<br><br>CLASS ACTION<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED CONSOLIDATED COMPLAINT**<br><br>Hearing Date:  October 28, 2011<br>Hearing Time:  9:00 a.m.<br>Courtroom:     7<br><br>Judge:  The Honorable Maxine M. Chesney<br><br>Date Action Filed:  September 2, 2009 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. PLAINTIFF FAILS TO RAISE A STRONG INFERENCE OF SCIENTER AS TO ANY DEFENDANT ......................................................................................................2

    A. Neither The Fact Of A Restatement Nor The Failure To Follow GAAP Is Sufficient To Establish Scienter ...........................................................................2

    B. Plaintiff's Unpleaded "Cookie Jar" Theory Cannot Rescue His Defective Restatement Theory Of Scienter .........................................................................4

    C. Plaintiff Cannot Rely On SOX Certifications Or Internal Control Deficiencies To Raise An Inference of Scienter .....................................................................5

    D. Executive Departures Do Not Raise An Inference Of Scienter ..............................6

    E. Plaintiff's Confidential Witness Accounts Remain Deficient And Offer Nothing To Establish Scienter On The Part Of Defendants ...................................6

    F. Plaintiff's Reliance On The Core Business Inference Is Inapposite And Adds No Weight To His Scienter Allegations ...............................................................9

    G. Plaintiff Fails To Show How The Timing And Amount Of Certain Defendants' Stock Sales Are Even Remotely Suspicious......................................10

    H. A Holistic Review Does Not Save Plaintiff's Deficient Allegations .....................12

III. VOGEL IS NOT A SPEAKER................................................................................12

IV. THE ACC AGAIN FAILS TO PLEAD LOSS CAUSATION...........................................13

V. PLAINTIFF STATES NO CLAIM FOR INSIDER TRADING UNDER 20A ................15

VI. THE ACC FAILS TO PLEAD A CONTROL PERSON CLAIM ..................................15

VII. CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) .............................................................................................. 14

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .............................................................................................. 10

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) .............................................................................................. 5

*Brodsky v. Yahoo! Inc.*,
592 F. Supp. 2d 1192 (N.D. Cal. 2008) .............................................................................. 15

*Buban v. O'Brien*,
1994 WL 324093 (N.D. Cal. June 22, 1994) ...................................................................... 15

*Cho v. UCBH Holdings Inc.*,
2011 WL 3809903 (N.D. Cal. May 17, 2011) .............................................................. 10, 13

*City of Brockton Ret. Sys. v. Shaw Group, Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008) ................................................................................. 12

*Commc'ns Workers of Am. Plan for Emps.' Pensions and Death Benefits v. CSK Auto Corp.*,
2007 WL 951968 (D. Ariz. Mar. 28, 2007) ........................................................................ 12

*Fouad v. Isilon Sys., Inc.*,
2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) .................................................................. 6

*Gebhardt v. ConAgra Foods, Inc.*,
335 F.3d 824 (8th Cir. 2003) ................................................................................................ 4

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ....................................................................................... 2, 5, 6

*In re Cadence Design Sys., Inc. Sec. Litig.*,
692 F. Supp. 2d 1181 (N.D. Cal. 2010) .......................................................................... 7, 13

*In re Coinstar Inc. Sec. Litig.*,
2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) .................................................................. 13

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................................................ 2, 6

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005) .............................................................................................. 4

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ................................................................................................. 14

*In re Interlink Elecs., Inc. Sec. Litig.*,
 2008 U.S. Dist. LEXIS 84463 (C.D. Cal. Oct. 6, 2008) ..................................................... 9

*In re Maxim Integrated Products, Inc., Sec. Litig.*,
 639 F. Supp. 2d 1038 (N.D. Cal. 2009) ........................................................................... 14

*In re Nvidia Corp. Sec. Litig.*,
 2011 WL 4831192 (N.D. Cal. Oct. 12, 2011) ............................................................. 8, 15

*In re Rackable Sys., Inc. Sec. Litig.*,
 2010 WL 199703 (N.D. Cal. Jan. 13, 2010) ...................................................................... 6

*In re Scholastic Corp. Sec. Litig.*,
 252 F.3d 63 (2d Cir. 2001) ................................................................................................ 4

*In re Silicon Image, Inc. Sec. Litig.*,
 2007 WL 2778414 (N.D. Cal. Sept. 21, 2007) *aff'd*, 325 Fed. Appx. 560 (9th Cir. 2009) ......... 7

*In re Taleo Corp. Sec. Litig.*,
 2010 WL 597987 (N.D. Cal. Feb. 17, 2010) ..................................................................... 4

*In re Verifone Holdings, Inc. Sec. Litig.*,
 2009 WL 1458211 (N.D. Cal. May 26, 2009) ................................................................ 12

*In re Verifone Holdings, Inc. Sec. Litig.*,
 2011 WL 1045120 (N.D. Cal. Mar. 22, 2011) ................................................................ 13

*In re Verifone Sec. Litig.*,
 11 F.3d 865 (9th Cir. 1993) ............................................................................................. 15

*In re Worlds of Wonder Sec. Litig.*,
 35 F.3d 1407 (9th Cir. 1994) ............................................................................................. 2

*Janus Capital Group, Inc. v. First Derivative Traders*,
 131 S. Ct. 2296 (2011) ..................................................................................................... 13

*Lipton v. Pathogenesis Corp.*,
 284 F.3d 1027 (9th Cir. 2002) ......................................................................................... 15

*McCasland v. FormFactor Inc.*,
 2009 WL 2086168 (N.D. Cal. July 14, 2009) ......................................................... 4, 5, 6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
 540 F.3d 1049 (9th Cir. 2008) ......................................................................................... 14

*Middlesex Ret. Sys. v. Quest Software Inc.*,
 527 F. Supp. 2d 1164 (C.D. Cal. 2007) ............................................................................. 6

*N.Y. Emps.' Ret. Sys. v. Berry*,
 667 F. Supp. 2d 1121 (N.D. Cal. 2009) ........................................................................... 13

*Paracor Fin., Inc. v. General Elec. Capital Corp.*,
 96 F.3d 1151 (9th Cir. 1996) ........................................................................................... 15

*Schneider v. Cal. Dep't. of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) .......................................................................................... 5

*SEC v. Fraser*,
  2010 U.S. Dist. LEXIS 7038 (D. Ariz. Jan. 28, 2010) ................................................... 13

*SEC v. Reyes*,
  491 F. Supp. 2d 906 (N.D. Cal. 2007) .............................................................................. 4

*SEC v. Wolfson*,
  539 F.3d 1249 (10th Cir. 2008) ...................................................................................... 13

*South Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ...................................................................................... 3, 10

*Stocke v. Shuffle Master, Inc.*,
  615 F. Supp. 2d 1180 (D. Nev. 2009) ............................................................................... 5

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
  633 F. Supp. 2d 763 (D. Ariz. 2009), *vacated in part on other grounds*, 690 F. Supp. 2d 959
  (D. Ariz. 2010) ................................................................................................................ 14

*Wozniak v. Align Tech., Inc.*,
  2011 WL 2269418 (N.D. Cal. June 8, 2011) ................................................................... 3

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................................................... *passim*

**Statutes**

15 U.S.C. § 78t-1(a) ............................................................................................................ 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.     INTRODUCTION

The allegations leveled by plaintiff in this action have been decisively rejected by the Court for failure to plead scienter or loss causation. Plaintiff's Opposition ("Opposition" or "Opp.") confirms that the defects identified by the Court cannot be corrected; instead of offering particularized facts that satisfy the stringent pleading standards of the PSLRA, plaintiff simply argues that the Court's prior Order [Dkt. 87] ("Order") was wrongly decided.

Thus, the Opposition asserts that the Court: erroneously concluded that Immersion's accounting violations were not of such "unusual" nature as to give rise to an inference of scienter (Opp. at 5-6); "did not consider the red flags alleged in the ACC," (Opp. at 6, n.6); misinterpreted Ninth Circuit law regarding confidential witness ("CW") allegations (*id*. at 11); missed the point in examining allegations of certain confidential witnesses (*id.* at 11, n.17); incorrectly included vested options in analyzing insider trading (*id.* at 14); and failed to take into account recent Ninth Circuit precedent in examining plaintiff's "core business inference" claims (*id.* at 17). In other words, plaintiff invites the Court to reconsider essentially the same facts and law presented earlier and simply reverse itself. There is no basis for the Court to indulge such a request.

The failure to plead new facts pervades the ACC [Dkt. 90] ("ACC"):

- No new facts are alleged explaining how Immersion's restatement raises an inference of scienter. Instead, plaintiff's Opposition resorts to an unpleaded theory, claiming that Immersion was engaged in "cookie jar" accounting – an assertion which never appears in the ACC, has no factual support from the ACC, and is untrue in any event.
- While the ACC rewords certain CW accounts, and two new CWs are put forward, plaintiff's fundamental problem remains – *not one* CW claims that any defendant committed fraud, *not one* CW identifies a single fraudulent transaction, and *not one* CW identifies facts explaining how any defendant had knowledge of wrongdoing.
- Plaintiff's loss causation allegations remain similarly unchanged. The ACC cites to precisely the same "corrective disclosures" that were rejected by this Court previously, under the apparent misimpression that merely describing disclosures in a different manner would force a contrary result. This tactic is of no avail – the disclosures cited still do not reveal any hint of fraud, and plaintiff's revised characterization of them does not change that analysis.

What the Opposition does make abundantly clear is that plaintiff now rests all hope for surviving dismissal on the Court "changing its mind" on fundamental points of law. Having spent two years trying to root out a claim against these defendants for fraud, plaintiff is unable to offer any new, well-pleaded facts. The ACC should now be dismissed with prejudice.

## II. PLAINTIFF FAILS TO RAISE A STRONG INFERENCE OF SCIENTER AS TO ANY DEFENDANT

### A. Neither The Fact Of A Restatement Nor The Failure To Follow GAAP Is Sufficient To Establish Scienter

Plaintiff's lead argument continues to be the mistaken notion that a restatement or failure to follow GAAP is sufficient to establish scienter. Opp. at 4-7. This theory was previously rejected by the Court, which carefully examined Immersion's restatement and its constituent accounting adjustments, and concluded it did not support an inference of scienter. Order at 7-9; *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (restatement alone does not create a strong inference of scienter); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) (without more, GAAP violations do not amount to fraud).

Neither the ACC nor the Opposition provide new facts sufficient to overturn the Court's prior conclusion. Most notably, the Court's Order set forth two primary reasons (among others) why the restatement could not support an inference of scienter: 1) the alleged "side agreement" in 2008 was "not alleged to have been made known to defendants"; and 2) the remainder of the revenue adjustments in the restatement were "not due to clearly obvious facts," and were not of such "'unusual' nature as to give rise to an inference of scienter on the part of the named defendants." Order at 8-9. The ACC does nothing to remedy these defects.

With regard to the alleged side agreement, plaintiff never directly claims defendants knew of its existence and there are no specific facts supporting such an assertion. *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005) (scienter allegations must "'be augmented by facts that shed light on the mental state of defendants, rather than conclusory allegations that defendant must have known of the accounting failures'") (citation omitted). Instead, plaintiff merely leaps to that conclusion, on the scant basis that certain defendants received updates on deals with a Chinese distributor and that sales to that distributor were claimed to be part of the restatement. Opp. at 5, n.5. By definition, however, a side agreement is "hidden" and would ***not*** have been part of standard deal terms or updates. Order at 8; *see also Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 746-47 (9th Cir. 2008) (finding surreptitious nature of illegal payments made it equally likely they were kept secret from company

management).  Indeed, even basic scrutiny of the putative witness account reveals the flaw in plaintiff's logic, given that Mr. Vogel is among those claimed to have received these alleged "updates" (ACC ¶ 70) and he left the Company long before Q4 2008, when the side agreement is alleged to have been made.  *See id*. ¶ 55; Muck Decl., [Dkt. 95], Ex. A at 5 ("Muck. Decl.").

Plaintiff fares no better in his attempt to address the Court's finding that the restatement adjustments at issue − *e.g*., "FOB" terms, rights of return, lack of probability of collection, etc. − were not of such "unusual" nature as to give rise to an inference of scienter.  Order at 8-9.  Instead of providing new facts, the Opposition asserts that the Court was mistaken in its assessment.  Opp. at 5-6.  Plaintiff argues, for instance, that "bill and hold" transactions have been deemed "unusual" by the SEC, and therefore the Court should reverse its ruling.  *Id*.  Putting aside the fact that the restatement never categorizes any of the transactions at issue as "bill and hold," this argument ignores the fact that the Court and the *South Ferry* case it cited used the term "unusual" in an entirely different fashion than the SEC, *i.e*., they had in mind transactions so unusual in size or effect that defendants necessarily would have known of them.  Order at 8-9; *South Ferry LP, No. 2  v. Killinger*, 542 F.3d 776, 785 & n.3 (9th Cir. 2008) (citing as example of "unusual circumstances" where defendant failed to disclose loss of two largest customers, comprising 80% of the company's revenue).  Nothing in the ACC controverts the Court's prior ruling that the restated transactions at issue here simply do not rise to the level of "unusual."

Plaintiff also claims that the Court's analysis of the restatement adjustments "did not consider the red flags alleged in the ACC," (Opp. at 6, n.6, citing ACC ¶¶ 250-60), a suggestion that is demonstrably false.  All but one of the so-called "red flags" were *included* in the prior Complaint [Dkt. 63] ("Compl.") and thus *considered* in granting defendants' prior motion (*compare, e.g.,* ACC ¶¶ 250-254, 256-60 *with* Compl. ¶¶ 4, 12, 17, 44, 82-85, 110, 140-42, 173-78).  Moreover, not one of the allegations, new or old, suggest actual "red flags."  For example, vague claims of internal reports and meetings (ACC ¶¶ 251-54, 256, 260) do not show defendants were put on notice of alleged accounting violations.  Order at 9-10; *Zucco*, 552 F.3d at 1000-01; *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *11-12 (N.D. Cal. June 8, 2011) (Chesney, J.) (rejecting as conclusory claims of meetings and reports unaccompanied by specific information).

In addition, plaintiff cannot escape the fact that the bulk of the revenue adjusted in 2008 was not reversed but simply deferred to later periods. *See* MTD 8-9 [Dkt. 94] ("MTD"). Plaintiff downplays the deferral of the restated revenue citing *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 830-31 (8th Cir. 2003) and *SEC v. Reyes*, 491 F. Supp. 2d 906, 910 (N.D. Cal. 2007), but neither case is on point. Opp. at 8.[1] In both *Gebhardt* and *Reyes*, the issue was not scienter, but the *materiality* of representations. *Gebhardt*, 335 F.3d at 830-31; *Reyes*, 491 F. Supp. 2d at 910. Here, both the magnitude and nature of the restatement weigh against a finding of scienter. While it is true that for the entirety of 2008 just under $3.7 million in revenue was ultimately restated, the vast majority of that revenue was merely deferred, and almost half of it ($1.6 million) related to discovery of the undisclosed side agreement affecting all revenue with a single customer. Opp. at 5, 7, Muck. Decl., Ex. A at 6, 8. Thus the nature of the resulting adjustments here – deferring and ultimately *increasing revenue* in certain periods – simply does not support plaintiff's theory of scienter. *McCasland v. FormFactor Inc.*, 2009 WL 2086168, at *3 (N.D. Cal. July 14, 2009).[2]

### B. Plaintiff's Unpleaded "Cookie Jar" Theory Cannot Rescue His Defective Restatement Theory Of Scienter

Confronted by the flaws in his restatement theory of scienter, and specifically the fact that revenue in 2007 was *understated*, the Opposition conjures up an unpleaded theory, alleging that defendants engaged in "cookie jar accounting," *i.e.* intentionally overstating *and* understating revenue in order to "smooth" earnings. Opp. at 2. This theory fails for a variety of reasons.

First, courts "may not look beyond the complaint to a plaintiff's . . . memorandum in

---

[1] Plaintiff's other authorities also illustrate how he has failed to meet his pleading burden. For instance, in the *In re Daou Sys., Inc. Sec. Litig.* case, plaintiff made "specific allegations of deliberate accounting misfeasance," "specific allegations of direct involvement in the production of false accounting statements and reports" and alleged "with specificity that the top executives actually directed the improper revenue recognition." 411 F.3d 1006, 1023-24 (9th Cir. 2005); *see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) (complaint contained "detailed allegations as to what defendants knew on a daily, weekly and monthly basis…while at the same time making public statements that painted a different picture").

[2] Plaintiff's observation that certain defendants understood accounting or were MBAs (Opp. at 6) is no substitute for particularized facts showing defendants committed fraud. Order at 9; *In re Taleo Corp. Sec. Litig.*, 2010 WL 597987, at *9-10 (N.D. Cal. Feb. 17, 2010). Similarly, assertions concerning the "relative simplicity and obviousness" of alleged accounting errors (Opp. at 6), unaccompanied by a single supporting fact, fly directly in the face of the Court's prior ruling that the adjustments at issue were "not due to clearly obvious facts." Order at 8.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

opposition" for unpleaded theories in adjudicating a motion to dismiss. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). The ACC never alleges that defendants engaged in smoothing or cookie jar accounting, or that any understatement of revenue was intentional. Second, none of the CWs relied upon by plaintiff even hint that defendants' intentionally *understated* Immersion's financial results in an effort to manage earnings. Finally, plaintiff's smoothing theory does not comport with the facts. Plaintiff points out that *revenues* during Q2 and Q3 2007 were overstated, but plaintiff ignores the fact that once *other* accounting adjustments are taken into account net income remained *understated* for those quarters. ACC ¶ 127. Thus, there was no "smoothing" at all in 2007 – Immersion's bottom line, *i.e.*, its net income, was understated at all relevant times in 2007, a fact thoroughly inconsistent with plaintiff's unpleaded "cookie jar" theory of fraud. *McCasland*, 2009 WL 2086168, at *8 (no inference of scienter where allegations are "logical[ly] inconsisten[t]" with the "fraud theories asserted"). Moreover, plaintiff's theory also relies upon the illogical premise that defendants were purposefully *overstating* Immersion's revenue results while *simultaneously understating* its results for non-revenue items in the same quarters, a theory utterly inconsistent with an intentional scheme to defraud. *Id.* at *8.

### C. Plaintiff Cannot Rely On SOX Certifications Or Internal Control Deficiencies To Raise An Inference of Scienter

Plaintiff continues to press his misguided theory that Sarbanes-Oxley certifications provide a basis for inferring defendants' scienter. Opp. at 19. Although he acknowledges that he must allege that defendants were severely reckless in making these certifications (*id.*), as before, plaintiff alleges no particularized facts showing that defendants knew or should have known that Immersion's financial statements were false at the time they signed the certifications. *See* Order at 12; *Glazer*, 549 F.3d at 747 (Sarbanes-Oxley certifications raise no inference of scienter absent a showing of severe recklessness).[3] In place of particularized allegations, plaintiff merely recites the text of the certifications and then alleges in conclusory terms that defendants "knew or

---

[3] Plaintiff's cases are unavailing. For example, in *Stocke v. Shuffle Master, Inc.*, SOX certifications supported scienter where defendants admitted internal control deficiencies and promised to remediate, yet failed to do so, and then signed SOX certifications attesting to the effectiveness of their internal controls. 615 F. Supp. 2d 1180, 1190 (D. Nev. 2009).

recklessly disregarded that the SOX certifications . . . were false and misleading." ACC ¶¶ 228, 264. Parroting back the legal standard to the Court does not substitute for particularized factual allegations required to support a strong inference of scienter. *Glazer*, 549 F.3d at 747.

### D. Executive Departures Do Not Raise An Inference Of Scienter

Contrary to plaintiff's suggestion, executive departures are not indicative of scienter unless accompanied by specific facts tying those events to wrongdoing. *See Cornerstone*, 355 F. Supp. 2d at 1093 ("[N]otable departures are not in and of themselves evidence of scienter. Most major stock losses are often accompanied by management departures, and it would be unwise for courts to penalize directors for these decisions."); *In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 199703, at *9 (N.D. Cal. Jan. 13, 2010). This Court agreed, and plaintiff's only response has been to rephrase his prior allegations with greater invective – alleging a "whirlwind" of departures and making unfounded allegations that certain defendants' "employment with the Company was terminated." *See* ACC ¶ 239.[4] At no point does the ACC meet the standard set by the Court's Order, *i.e.*, pleading specific facts that show defendants were "terminated for wrongdoing." Order at 11; *see also McCasland*, 2008 WL 2951275, at *9.[5]

### E. Plaintiff's Confidential Witness Accounts Remain Deficient And Offer Nothing To Establish Scienter On The Part Of Defendants

Plaintiff's Opposition confirms that he cannot cure the central defect running through his CW allegations – ***not one CW ever asserts, even under the cloak of confidentiality, that any defendant knew the Company's statements were materially misleading***. Plaintiff's attempt to

---

[4] Plaintiff's cases actually support the absence of an inference of scienter on the basis of the executive departures at issue here. *See Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at *11 (W.D. Wash. Dec. 29, 2008) (executive departures "[s]tanding alone" did not support scienter, but were significant because the executives were *fired* in the wake of an internal investigation); *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1187 (C.D. Cal. 2007) (CFO's resignation could support an inference of scienter where he refused to cooperate with internal investigation and instead chose to resign).

[5] Plaintiff's allegations regarding Vogel's departure (Opp. at 18) are unfounded and contradict plaintiff's own theory regarding executive departures. Plaintiff never establishes how **CW1**, an accountant, was in a position to know whether a senior executive in sales was fired. *Zucco*, 552 F.3d at 995-96 (allegations made by CW not in a position to know relevant information are insufficient to raise an inference of scienter). Moreover, plaintiff's claim that it is "notable" that Vogel resigned prior to a positive revenue announcement (Opp. at 18), runs directly counter to plaintiff's claim that departures following an investigation are suspect. *Id*. Plaintiff cannot have it both ways − executive departures cannot be deemed suspicious after ***both*** good and bad news.

bulk up the ACC with additional generalizations and further unsupported inferences does not hide that fact. As set forth in defendants' moving papers, the CWs continue to lack firsthand knowledge and offer accounts that fail to establish any defendant's scienter. MTD at 13-19. Indeed, plaintiff's Opposition effectively *admits* as much, urging the Court to disregard well-established principles for assessing confidential witnesses and: (1) rely on "[v]ague or ambiguous allegations" in place of particularized facts (Opp. at 4); (2) consider CW accounts not based on 'personal knowledge' (*id*. at 12); and (3) entertain inferences based on hearsay, in the absence of reliable firsthand accounts (*id*. at 13).[6] In other words, plaintiff effectively disavows the ability of these CWs to act as direct witnesses to any supposedly fraudulent conduct. As this Court has recognized, such purely speculative accounts are no substitute for facts when it comes to establishing fraud. *See In re Silicon Image, Inc. Sec. Litig.*, 2007 WL 2778414, at *2 (N.D. Cal. Sept. 21, 2007) (Chesney, J.), *aff'd*, 325 Fed. Appx. 560 (9th Cir. 2009) (no scienter where confidential witness allegations were conclusory opinions with no factual basis).

In its prior Order, this Court held that plaintiff's CW allegations failed to demonstrate that defendants had actual access to information showing financial reports were incorrect. Order at 9-10. To avoid the same result here, plaintiff contends that the ACC "now contains new allegations" which "establish actual knowledge." Opp. at 10. In reality, plaintiff merely restates the prior CW allegations and the allegedly "new" assertions do nothing to substantively rehabilitate those inadequate accounts. For example, plaintiff claims that **CW1** "now clarifies" that he personally had disagreements about revenue recognition with "***defendant Vogel face-to-face and by e-mail***." *Id*., citing ACC ¶ 120. Putting allegations in bold and italics does not render them new, or more persuasive. *See* Order at 6, 11 (rejecting as insufficient allegation that **CW1** had 'disagreements with Vogel regarding revenue recognition . . . both face-to-face and via e-mail'). The ACC then goes on to add an ***unattributed*** claim that certain of these disagreements were "ultimately escalated" to Ambler, and that he made the final decisions on "whether to

---

[6] Plaintiff's continued reliance on *In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp. 2d 1181 (N.D. Cal. 2010) to suggest "personal knowledge" is not required remains misplaced. In *Cadence*, the Court dealt with the ***corroborating*** account of a confidential witness who provided ***detailed and specific (albeit secondhand) information strongly suggesting scienter***. Here, not a single CW offers detailed and specific information suggesting scienter, secondhand or otherwise.

recognize revenue on sales" (ACC ¶ 245), when in fact *nowhere* does **CW1** say that Ambler allowed revenue to be recorded improperly in light of any such disagreements. Similarly, while **CW1** now claims to have provided sales packets to Ambler identifying instances where shipments may have preceded credit approval (Opp. at 10, ACC ¶¶ 65, 255), **CW1** never says such approval was not ultimately received, or point to a single transaction where revenue was improperly recognized as a result. In short, nothing **CW1** purports to recount raises an inference that any defendant "at the relevant time, had knowledge of information showing revenues were improperly recognized." Order at 11. *See also In re Nvidia Corp. Sec. Litig.*, 2011 WL 4831192, at *6-7, 9, 11 (N.D. Cal. Oct. 12, 2011) (generalized claims that a defendant may have known of a potential problem does not establish an "intent to defraud"); *Zucco*, 552 F.3d at 999 (accounting disagreements alone do not establish scienter).[7]

Likewise, plaintiff's discussion of **CW4** highlights why it is inappropriate to rely on CWs who lack personal knowledge. The Opposition asserts that **CW4** "clearly confirms that defendant Ambler had 'actual access' to the information from which the false accounting numbers were derived." Opp at 10-11. Specifically, plaintiff claims **CW4** suggests that Ambler had DSO information showing that revenue from the company's "Chinese Distributor" was improperly recognized. *See id.* at 11 n.15. **CW4** provides no support for any such claim. *First*, ***CW4 left the Company in 2007***, prior to the class period, and thus has no personal knowledge of reports or revenue decisions occurring after that time. *Second*, even assuming that **CW4** met with Ambler to discuss DSO numbers, those numbers ***could not*** have reflected anything about the "Chinese Distributor" because, as plaintiff himself alleges, it first became a customer "in mid-2008," after **CW4** left the company. *See* ACC ¶¶ 35, 70.

Plaintiff fares no better in recounting the allegations of his other confidential witnesses. For example, with respect to **CW2's** unremarkable assertion that some customers returned products and that such returns were the subject of weekly meetings (Opp. at 12), the Opposition assiduously avoids acknowledging that the purpose of those meetings was to determine "whether

---

[7] **CW1's** purported assertion that "Chinese customers" were, in his opinion, of "questionable creditworthiness" (Opp. at 10), cannot, without an inappropriate leap of logic, support a claim that revenue was knowingly recognized improperly.

to replace or repair returned products." ACC ¶ 66.[8] **CW2** says nothing about whether revenue associated with any of the alleged returns was improperly recognized. Plaintiff's attempt to raise an inference of scienter based on **CW3** is even more tenuous. The sole allegation attributed to CW3, *on the basis of a three month tenure in 2009,* is that the Company used a sales process checklist for tracking leads and that certain defendants received a domestic sales forecast. Opp. at 12; ACC ¶ 252. How plaintiff jumps from access to that basic information to fraud is never explained. Similarly, nothing in the account of **CW5**, who allegedly sent sales information to Immersion's Controller, who in turn conferred with Ambler, raises an inference of scienter. Opp. at 13. Plaintiff speculates that Mr. Ambler therefore had "access to the information" (*id*.) but at no point does **CW5** state exactly what the information was, or more importantly, that it gave Mr. Ambler actual knowledge of improper accounting. Finally, the only putative "new" allegations are those provided by **CW6** and **CW7**. As noted in defendants' moving papers (MTD 15-16 n.13), **CW6** states only that he was "aware that there were promises made outside of the scope of the original agreement" with a Chinese distributor. Opp. at 13, ACC ¶ 70. **CW6** *never* states what those promises were, when they were made, who else knew of them, or that they relate in any way to the propriety of revenue recognition. It is plaintiff who insinuates that **CW6** must be referring to the hidden "side agreement" – even though **CW6** makes no such allegation. *Id*. Finally, plaintiff offers nothing to rebut the fact that **CW7**'s secondhand account of Mr. Vogel pushing to have revenue recognized, or **CW7**'s perception that international sales increased, say nothing about improper revenue recognition or the scienter of these defendants. *Zucco*, 552 F.3d at 995 (statements of confidential witnesses must actually be "indicative of scienter").

### F. Plaintiff's Reliance On The Core Business Inference Is Inapposite And Adds No Weight To His Scienter Allegations

Plaintiff's continued effort to paint Immersion's Medical division as a "core business" is without basis. As defendants noted previously, Medical accounted for only 0.43% of the Company's operating income in 2007, lost money in 2008 and 2009, and was eventually sold.

---

[8] Contrary to plaintiff's suggestion, *In re Interlink Elecs., Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 84463, at *11-12 (C.D. Cal. Oct. 6, 2008) provides no support for the notion that **CW2**'s recollections suggest scienter here. That case involved defendants shipping out large quantities of product prior to quarter end, only to be returned shortly thereafter, and then hiding "rights to return" from their accounting department to book the sales. *Id*. at *9-10. Here, by contrast, it is *plaintiff*, not **CW2**, who editorializes that there were "high rates of return" (Opp. at 12) and **CW2** never suggests the returns (for repair or replacement) were the byproduct of a fraudulent scheme.

*See* MTD at 10. This Court agreed (Order at 7-8), noting that the core operations inference is available only in "unusual circumstances," and concluded that there were insufficient facts to apply that inference here. *South Ferry*, 542 F.3d at 786; *see also Zucco*, 552 F.3d at 100 (same). Not a single new fact is pled in the ACC sufficient to alter this conclusion. Opp. at 17-18.

Moreover, even if one were to assume that Medical was a core operation, the facts leading to the restatement at issue here were **not** "facts prominent enough that it would be 'absurd to suggest' that top management was unaware" of their existence. *Zucco*, 552 F.3d at 1001 (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989 (9th Cir. 2008)); *see also* Order at 8-9. The Court has already found that the revenue adjustments in the restatement were **"not due to clearly obvious facts"** and **"not of such 'unusual' nature"** as to give rise to an inference of scienter on the part of the named defendants." *Id.* (emphasis added) (citing *South Ferry*, 542 F.3d at 786). Plaintiff adds no new allegations that would change the Court's earlier assessment.[9]

Despite plaintiff's persistence, the allegation that defendants were "hands-on" does not add to an inference of scienter absent **"additional detailed allegations about the defendants' actual exposure to information."** Order at 8 (quoting *South Ferry*, 542 F.3d at 784) (emphasis added). Although plaintiff dresses up his deficient pleadings with the words "actual access," the ACC can be read in vain for specific facts explaining what defendants actually knew or what specific information they received that would have put them on notice of alleged accounting misstatements. *Zucco*, 552 F.3d at 1000 (plaintiffs must support core operations inference with "'detailed and specific allegations about management's exposure to factual information within the company'") (quoting *South Ferry*, 542 F.3d at 785); *Cho v. UCBH Holdings Inc.*, 2011 WL 3809903, at *15 (N.D. Cal. May 17, 2011) (same).[10]

### G. Plaintiff Fails To Show How The Timing And Amount Of Certain Defendants' Stock Sales Are Even Remotely Suspicious

---

[9] Indeed, the cases cited by plaintiff starkly contrast to the facts at issue here. *See, e.g., Berson*, 527 F.3d at 984, 987-88 & n.5 (inferring scienter from knowledge of stop-work orders on contracts totaling tens of millions of dollars and loss of the company's two largest customers comprising 80% of the company's revenue).

[10] Unable to plead sufficient facts to state a claim, plaintiff resorts to claiming that the Court did not consider recent authority when it rejected his core operations theory. Opp. at 17, citing *South Ferry*, 542 F.3d at 786. The opposite is true – the Court relied heavily on the *South Ferry* case in its analysis. Order at 8-9.

Tellingly, the Opposition's discussion of the ACC's insider trading allegations does ***not*** begin by citing any new facts – because there are none. Opp. at 14. Plaintiff instead asserts that the Court erred by including vested options in its analysis of defendants' stock sales. *Id*. The Opposition makes this argument by citing ***exactly the same cases*** it presented to the Court in opposing the first motion to dismiss. *Cf.,* Opp. at 14 and Opp. to MTD Compl. at 15. It is axiomatic that repeating the same facts, supported by the same authorities, cannot justify overturning the Court's ruling that defendants' stock sales were not unusual or suspicious in timing or amount, and thus cannot support a strong inference of scienter. Order at 12-13.

Plaintiff also takes issue with the Court's finding that defendants' sales were not suspicious because they all occurred in 2007 when "Immersion was understating its revenue and net income" Order at 13 (emphasis in original). The Opposition responds by arguing that revenue was overstated in Q2 and Q3 of 2007 (Opp. at 15), disregarding the fact that when all the relevant accounting adjustments for those periods are taken into account, net income for that period was ***understated***, fatally undermining any claim that defendants were intentionally selling stock when the price was inflated. ACC ¶ 127. Despite the fact that defendants' opening papers heavily emphasized this fact, the Opposition does not even attempt a rejoinder.[11]

Thus, there is nothing new in the ACC to cause the Court to retreat from its finding that plaintiff's insider trading allegations are defective – all of defendants' sales took place during periods where Immersion's net income was ***understated***; the Court has already determined that the amounts sold were not unusual; the bulk of the sales were pursuant to pre-existing 10b5-1 plans; and the CEO of the Company actually purchased stock during the relevant period.[12] Order at 12-13. Plaintiff's insider trading claims still cannot support an inference of scienter.

---

[11] Plaintiff's claim that Immersion's stock repurchase plan "reinforces scienter" was previously rejected by the Court, and the same result should occur here, given that the Opposition recycles, practically verbatim (with only minor adjustments in wording), its arguments from the first round of briefing. *Cf*., Opp. at 16 and Opp. to MTD Compl. [Dkt. 75] at 16.

[12] Plaintiff attempts to salvage his insider trading claims with a variety of assertions that do not even appear in the ACC. The Opposition's assertion that Vogel "was forced to forfeit his remaining options in connection with his ouster from the Company" is spun out of whole cloth – the ACC says no such thing, and tellingly the Opposition is devoid of any citation thereto. Opp. at 16, n.25. Similarly, the Opposition argues that sales pursuant to a 10b5-1 plan do not negate scienter when they are adopted during the class period, ignoring the fact that the ACC never makes any such claim. *Id*. at 15.

### H. A Holistic Review Does Not Save Plaintiff's Deficient Allegations

Where, as here, a complaint rests on mere generalization and contains *no particularized facts* raising even a weak inference of scienter, a "holistic" review does not rescue the claims from dismissal. *See Zucco*, 552 F.3d at 1008 (holding that a holistic review and a "comprehensive perspective . . . cannot transform a series of inadequate allegations into a viable inference of scienter"); *see also In re Verifone Holdings, Inc. Sec. Litig.*, 2009 WL 1458211, at *10 (N.D. Cal. May 26, 2009) (insufficient allegations of scienter "fare no better when read in combination than when read independently"). While plaintiff no doubt hopes that the sheer number of allegations in the ACC will conceal the absence of specific facts supporting fraud, there is no hiding from the fact that when it comes to scienter, the sum of all zeros is still zero. *See City of Brockton Ret. Sys. v. Shaw Group, Inc.*, 540 F. Supp. 2d 464, 475-76 (S.D.N.Y. 2008) (rejecting as "faulty math" plaintiff's suggestion that "zero plus zero adds up to something" and noting that conclusory allegations unsupported by fact do not, even in combination, raise the cogent and compelling inference of scienter required by *Tellabs*). Here plaintiff simply offers no facts, alone or viewed "holistically," that raise a strong inference of scienter.

### III. VOGEL IS NOT A SPEAKER

In a last-ditch effort to rescue his claims against Vogel – who did not make any challenged statement – plaintiff resorts to the dubious argument that he must have "substantially participated" in the alleged misstatements because his 2008 bonus was based in part on "press releases." Opp. at 20; ACC ¶ 243. What Plaintiff cannot do is point to a single fact showing how Vogel was involved in creating any challenged statement. Conclusory claims that Vogel "participated substantially in creating and drafting the Company's press releases" (ACC ¶¶ 58, 243) or that Vogel was "directly responsible for . . . results that were ultimately presented to investors" (*id.* ¶ 243) do not suffice without specific facts detailing what he did, saw and knew. Order at 5. Moreover, a general statement that Vogel worked on press releases cannot be used to support a claim that he substantially participated in the ***specific releases*** in question in this case. *Commc'ns Workers of Am. Plan for Emps.' Pensions and Death Benefits v. CSK Auto Corp.*, 2007 WL 951968, at *3 (D. Ariz. Mar. 28, 2007) (vague, repetitive allegations fail to show non-

speaker substantially participated or was intricately involved in alleged misrepresentations).

Similarly unavailing is plaintiff's argument that, if Vogel's purported actions were responsible, even in part, for the restatement, then he "'substantially participated' in the preparation of the alleged misstatements." Opp. at 19-20. As the Court previously ruled, allegations that Vogel shipped demo units, allowed products to be shipped prior to receipt of POs, or had disagreements with **CW1** regarding revenue recognition are insufficient to infer knowledge of wrongdoing. Order at 6. Additional allegations along the same lines (*see, e.g.*, ACC ¶¶ 23-25, 33) are no more effective to infer that Vogel played a substantial role in making the challenged statements. *See Cho*, 2011 WL 3809903, at *9 (allegations that non-speaker was involved in day-to-day operations did not demonstrate substantial participation).[13]

Moreover, plaintiff cannot escape the fact that Vogel was simply not responsible for revenue recognition. Indeed, the Court held that the prior Complaint did "not allege Vogel had any role in the preparation of information concerning revenue recognition, nor [did] it allege facts showing Vogel's conduct made it 'necessary or inevitable' that Immersion would overstate its revenues." Order at 6. The ACC does nothing to cure this deficiency, and indeed emphasizes that Ambler, not Vogel, made the "ultimate decision" on revenue recognition. ACC ¶¶ 23, 25, 69, 118, 245. Unable to plead specific facts supporting an inference that Vogel substantially participated in the making of challenged statements, the claims against him must be dismissed. *In re Verifone Holdings, Inc. Sec. Litig.*, 2011 WL 1045120, at *10 (N.D. Cal. Mar. 22, 2011).[14]

## IV. THE ACC AGAIN FAILS TO PLEAD LOSS CAUSATION

The Opposition betrays a fundamental misunderstanding of what the law requires to successfully plead loss causation, as well as the reasons why the Court found plaintiff's prior allegations in this area to be defective. The ACC cites substantially the same "corrective

---

[13] *See also In re Coinstar Inc. Sec. Litig.*, 2011 WL 4712206, at *10 (W.D. Wash. Oct. 6, 2011) (holding non-speaker not liable as Rule 10b-5(b) liability does not extend beyond the person or entity with ultimate authority over challenged statement and finding non-speaker not liable as a result, citing *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)).

[14] The cases cited by plaintiff are entirely distinguishable. In each case, particularized facts were pled demonstrating the defendant actually drafted or worked on the specific misstatements at issue. *See, e.g., SEC v. Wolfson*, 539 F.3d 1249, 1261 (10th Cir. 2008); *N.Y. Emps.' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1126-28 (N.D. Cal. 2009); *Cadence*, 692 F. Supp. 2d at 1192; *SEC v. Fraser*, 2010 U.S. Dist. LEXIS 7038, at *17-19 (D. Ariz. Jan. 28, 2010).

disclosures" rejected by this Court as insufficient to support a claim of loss causation.[15] The Court's Order correctly noted that when a plaintiff cites to alleged corrective disclosures to support loss causation, those disclosures must be expressly connected to the alleged fraud, *i.e.*, they must "tend to show previously reported revenue was incorrectly recognized." Order at 14. It is not enough to assert, as plaintiff does here, that disappointing financial results were the product of fraud, but the disclosure *itself* must give the reader some indication of the allegedly fraudulent behavior. *Id*. at 15; *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763, 818 (D. Ariz. 2009), *vacated in part on other grounds*, 690 F. Supp. 2d 959 (D. Ariz. 2010) (a "'corrective disclosure' is a disclosure that reveals the fraud, or at least some aspect of the fraud, to the market"). At no point, however, does the Opposition cite to language in any of the alleged disclosures that even hints at fraud – which is precisely the basis for the Court's prior dismissal of plaintiff's loss causation claims. Order at 14.

The first four corrective disclosures are nothing more than disappointing earnings releases that the Ninth Circuit deems "reports of the defendant's poor financial health generally" that cannot serve as corrective disclosures. ACC ¶¶ 277-283; *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063-64 (9th Cir. 2008). The same is true for the final corrective disclosure, where Immersion announced the Audit Committee investigation into Medical division transactions. ACC ¶ 237. Confronted by the Court's ruling that an announcement of an investigation cannot serve as a corrective disclosure (Order at 15, *citing In re Maxim Integrated Products, Inc., Sec. Litig.*, 639 F. Supp. 2d 1038, 1047 (N.D. Cal. 2009)), the Opposition again asserts that the Court is mistaken, citing the same cases relied upon in unsuccessfully opposing the first motion to dismiss. Opp. at 23. As before, plaintiff's repetition of failed arguments warrants the same result.[16] The ACC should be dismissed for failure to plead loss causation.

---

[15] The one new corrective disclosure, a routine earnings release that does not hint at disclosure of fraud, is indistinguishable from those already deemed defective by this Court. ACC ¶ 278.

[16] The Opposition also fails to explain away the ACC's contradictory claim that the corrective disclosures were *simultaneously* material misstatements. Plaintiff's citation to *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) is a non-sequitur – that case stands only for the narrow proposition that "complete" disclosure of fraud is not required for a disclosure to be corrective. Here, plaintiff argues that the statements both ***increased*** stock price inflation (*see* ACC ¶¶ 75-220) and simultaneously were corrective disclosures that ***decreased*** such inflation. *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009).

## V. PLAINTIFF STATES NO CLAIM FOR INSIDER TRADING UNDER 20A

Plaintiff's failure to plead a viable Section 10(b) claim also means his Section 20A claim fails. *In re Verifone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993). Moreover, plaintiff has no answer for his failure to meet Section 20A's express requirement that plaintiff plead facts demonstrating defendants traded "while in possession of material, nonpublic information." 15 U.S.C. § 78t-1(a). If, as pleaded, knowledge of "artificial inflation" is the putative basis for plaintiff's Section 20A claim (ACC ¶ 304), plaintiff must plead specific facts establishing the trading defendant knew the stock was artificially inflated at the time of the trade. *See Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1208 (N.D. Cal. 2008). Here, there are no such specific facts alleged. Thus, irrespective of the *solitary* same day trade plaintiff hopes to capitalize on in 2007, and even assuming trading within a few days is "contemporaneous" (*it is not, see Buban v. O'Brien*, 1994 WL 324093, at *3 (N.D. Cal. June 22, 1994)), absent specific facts supporting a knowing overstatement in 2007 (or any other period), plaintiff has no Section 20A claim.

## VI. THE ACC FAILS TO PLEAD A CONTROL PERSON CLAIM

For all the reasons set out in the opening brief, Plaintiff's boilerplate allegations regarding defendants' positions at Immersion still fail to establish control person liability. MTD at 24. Plaintiff also does not dispute that Section 10(b) liability is a predicate to liability under 20(a). *Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996). Having failed to plead a Section 10(b) claim, plaintiff's 20(a) claim also fails. *Zucco*, 552 F.3d at 990.

## VII. CONCLUSION

For all the foregoing reasons, plaintiff still cannot meet the fundamental pleading requirements of the PSLRA. Accordingly, the Court should dismiss the ACC with prejudice.[17]

Dated:   October 14, 2011                                  FENWICK & WEST LLP

By: _____*/s/ Susan S. Muck*_____
Susan S. Muck

Attorneys for Defendants

---

[17] Despite two years to develop facts establishing a strong inference of scienter, plaintiff fails to do so. Unaccompanied by any explanation of how amendment might address this fatal deficiency, further leave is unwarranted. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) (denying leave where no showing that plaintiffs could "cure the flaws in their pleading"); *Nvidia*, 2011 WL 4831192, at *12 (further leave denied for failure to plead scienter).